JACKSON C. DEMPSEY, Respondent, v. GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant, No. 42718—251 S.W. (2d) 42.

Division One, July 14, 1952.

Motion for Rehearing or to Transfer to Banc Overruled and Opinion Modified on Court's Own Motion, September 8, 1952.

340

_Thomas J. Cole, Oliver L. Salter_ and _Lyman J. Bishop_ for appellant.

*Roberts P. Elam* for respondent; *William A. Tautges* and *Eugene A. Rerat* of counsel.

HOLLINGSWORTH, J.—This case comes to the writer on reassignment. It is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for personal injuries sustained by plaintiff, a fireman on defendant's steam locomotive, when the locomotive was derailed at a point between Alix and Ozark, Arkansas. Defendant by answer admitted the derailment and that plaintiff's

resultant injuries were due to negligence of defendant. The issue was the amount of damages as would fairly and reasonably compensate plaintiff. The jury awarded plaintiff $55,000 damages, which award was reduced by remittitur, and judgment was rendered for $45,000. Defendant has appealed.

Defendant contends (1) that the trial court erred in refusing to permit defendant to inquire of plaintiff's witness, an actuary, if the witness knew there is no income tax on awards for personal injury; in refusing defendant's request for an instruction informing the jury that no income tax could be assessed upon an award for personal injury, [44] and that nothing should be included in the jury's verdict "for Federal, State or City taxation"; and in refusing to permit counsel for defendant to state in his argument to the jury that the amount of any award to plaintiff would not be subject to income tax; (2) that any award for future earnings lost to plaintiff should be based on net earnings after deduction for income taxes; and (3) that the judgment, after remittitur, is excessive.

In Hilton v. Thompson, 360 Mo. 177, 227 S.W. 2d 675, 681, an action for damages under the Federal Employers' Liability Act, we held that the trial court did not err in refusing defendant's proffered instruction directing the jury to include nothing in the verdict for Federal, State or City taxes since such taxes could not be assessed on the amount of any verdict awarded plaintiff. In the instant case, defendant, in an extended brief and argument, insists that our conclusion in the Hilton case was wrong and urges that we consider the matter anew. And, too, plaintiff says in his brief that "the time has come for this court to meet and decide squarely, and once and for all" whether income tax liability is a factor to be taken into account in fixing the amount of damages to be awarded a plaintiff in a personal injury action for impairment of earning capacity. To the extent the question is presented for determination in this case, we will again consider it.

The amount of damages received whether by action or by agreement on account of injuries is expressly excluded, and is exempt from income tax by the Internal Revenue Code, 26 U.S.C.A. § 22 (B) (5); and by the Income Tax Act of Arkansas, Section 14031 (2) (f), Pope's Digest, Statutes of Arkansas, 1937. There can be no doubt that any money which plaintiff, a resident of Arkansas, may receive as an award in this action will not be subject to income tax. It is also true that, had plaintiff not been injured, his future earnings would have been subject to income taxes, although the impact thereof could by no means be accurately measured, being variable by law, by amount of other taxable income and by possible change of family or exemption status.

Defendant cites cases holding that the damages recoverable under the Federal Employers' Liability Act are limited to actual pecuniary

loss. See Kansas City Southern Ry. Co. v. Leslie, 238 U.S. 599, 35 S. Ct. 844, 59 L.Ed. 1478; Lock v. Chicago, B. & Q. R. Co., 281 Mo. 532, 219 S.W. 919, 922. Further cases cited hold that recovery for future earnings is limited to the present cash value of net earnings. See Prince v. Kansas City Southern Ry. Co., 360 Mo. 580, 229 S.W. 2d 568, 575. Defendant also contends that both the Federal Courts and the Courts of this State have recognized that income tax is a proper item for consideration in determining the present cash value of the loss of future earnings, citing, among others, the cases of Phillips v. Phillips, Mo. App., 219 S.W. 2d 249, 273; Sunray Oil Corporation v. Allbritton, 188 F. 2d 751, 754; Wetherbee v. Elgin, Joliet and Eastern Ry. Co., 191 F. 2d 302, 309; DeVito v. United Air Lines, 98 F. Supp. 88, 98.

In the Phillips case, supra, the Kansas City Court of Appeals held it would not be justified in disagreeing with the trial court in considering the amount by which an award of alimony payable monthly would be reduced by income taxes payable by the wife. We do not think the problem presented in that case is analogous to the problem presented in this case. Alimony may be adjusted from time to time as the exigencies of the case require, but not so in the case of a final award of damages for loss of future earnings for the remainder of the plaintiff's life expectancy. In the Sunray and Wetherbee cases, supra, the appellate courts were considering whether the awards there made were excessive and it was noted *arguendo* in the discussion of that question that the awards were most liberal, in that they were based on computations of contractual rather than net earnings after tax deductions. To the same effect is the DeVito case, supra, wherein a Federal District Court (E.D. New York) was considering an allegedly grossly excessive verdict. None of these cases holds that the jury could or should be permitted to attempt to compute and deduct the estimated income tax liability [45] thereon; nor do the other cases cited by defendant.

On the other hand, all of the cases to which we have been cited or have found bearing directly on this subject uniformly hold that too many unforeseeable and variable factors would enter into any attempted computation of income tax liability on loss of future earnings to permit of any reasonably accurate estimate thereof. Stokes v. United States, 2 Cir., 144 F. 2d 82, 87; Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F. 2d 497, 502; Southern Pac. Co. v. Guthrie, 9 Cir., 180 F. 2d 295, 302-303, and, on rehearing, 186 F. 2d 926, 927; Billingham v. Hughes, [1949] 1 K.B. 643, 9 A.L.R. 2d 311, and annotation following; Smith v. Pennsylavania R. Co., Ohio App., 99 N.E. 2d 501, 504.

The effect of these cases is that, as a matter of necessity, the general rule that an award of damages for loss of future earnings should be based strictly on actual pecuniary loss cannot be rigidly adhered

to insofar as it may be impossible to compute with reasonable accuracy the amount of income tax liability that may attach thereto. We think they are soundly ruled and that the trial court did not err either in refusing to permit defendant to cross examine plaintiff's actuarial witness relative to income tax liability or in refusing to permit defendant to argue to the jury that in arriving at the amount of its award it should consider only the amount of future earnings lost to plaintiff after deduction of income taxes for which he would have been liable had he continued his employment without injury. But it does not follow that defendant was not entitled to have the jury instructed that any amount awarded plaintiff was not subject to Federal or (Arkansas) State income tax.

Present economic conditions are such that most citizens, most jurors, are not only conscious of, but acutely sensitive to, the impact of income taxes. Under the Federal and State income tax laws of both Arkansas and Missouri the net income of all persons is taxable except such as is specifically exempted. Few persons, other than those who have had special occasion to learn otherwise, have any knowledge of the exemption involved in this case. It is reasonable to assume the average juror would believe the award involved in this case to be subject to such taxes. It seems clear, therefore, that in order to avoid any harm such a misconception could bring about, it would be competent and desirable to instruct the jury that an award of damages for personal injuries is not subject to Federal or State income taxes. The instruction could be in substantially this form: "You are instructed that any award made to plaintiff as damages in this case, if any award is made, is not subject to Federal or State income taxes, and you should not consider such taxes in fixing the amount of any award made plaintiff, if any you make."

Can there be any sound reason for not so instructing the jury? We can think of none. Surely, the plaintiff has no right to receive an enhanced award due to a possible and, we think, probable misconception on the part of a jury that the amount allowed by it will be reduced by income taxes. Such an instruction would at once and for all purposes take the subject of income taxes out of the case.

We are now convinced and hold that an instruction substantially in the form above outlined should have been given in this case, and that the case of Hilton v. Thompson, 360 Mo. 177, 227 S.W. 2d 675, insofar as it is in conflict with the ruling here made, should no longer be followed.

We are constrained to hold, however, that the case should not be remanded for a new trial. The refused instruction was a cautionary one, the giving or refusal of which is generally held to be within the discretion of the trial court. West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W. 2d 308, 311; Enyart v. Santa Fe

Trail Transportation Co., Mo. Sup., 241 S.W. 2d 268. By given Instruction No. 1, the jury was expressly and correctly directed as to the elements of damages it should consider in arriving at a verdict. By given Instruction No. 5, it was cautioned that it should not allow anything except for the items mentioned in Instruction No. 1. It cannot be demonstrated that the jury did not follow those instructions, and our holding that the refusal to give the additional [46] cautionary instruction hereinabove discussed is not based on any assumption the jury did not follow given Instructions Nos. 1 and 5. Rather it is based on the theory that such an instruction should be given in order to avoid the imminent possibility of juries being led astray due to their likely ignorance of the fact that awards such as is here involved are not subject to income taxes. Under these circumstances, and in view of our holding in the Hilton case, supra, it would be harshly unjust to subject plaintiff to the ruling herein made. Therefore, we hold that this ruling shall be prospective only. See Koebel v. Tieman Coal & Materials Co., 337 Mo. 561, 85 S.W. 2d 519, 524.

It may be argued that if the jury is instructed an award is not taxable, it should also be instructed that any income realized therefrom is taxable. But we think not soundly so. To do so would cause the jury to enter into a field fully as speculative, if not more so, than an effort to compute and deduct income tax liability from the estimated gross loss of earnings before payment of taxes. In the case of income tax liability on future income realized from investment of the award there is the additional imponderable of what income, if any, a particular plaintiff would probably earn from investment thereof. Furthermore, we believe the jury would assume that any such income was subject to income tax assessment to the same extent as income from any other source; and, inasmuch as it could not possibly be estimated, any reference thereto in an instruction would tend to confuse and distract the jury and lead it into speculating on the amount thereof. See Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F. 2d 497, 502.

Subsequent to the submission of this case on April 24, 1952, defendant filed in this court a motion entitled "Motion to remand cause to Circuit Court of the City of St. Louis for new trial because of the death of respondent on May 26, 1952, after the verdict on April 9, 1951, from coronary occlusion unrelated to the accident of November 7, 1948". That plaintiff died on the date above stated is admitted.

The motion proceeds on the theory that the death of plaintiff 13½ months after the trial from a cause unrelated to his injuries is conclusive proof he did not have a life expectancy of 25.07 years, as the evidence at the trial showed, but instead had an expectancy of only 13½ months; and that a gross injustice would be done defend-

ant if defendant were not permitted to establish such fact and have the fact considered in a new determination of damages. In support of this contention, defendant cites Curry v. Thompson, Mo. Sup., 247 S.W. 2d 792, and other cases.

The trouble with defendant's contention is that proof of the death of plaintiff 13½ months after the trial from a cause unrelated to his injuries would not establish he did not, at the time of the trial, have a life expectancy of 25.07 years. To hold as defendant contends would have this court adopt the doctrine that the period of plaintiff's life was foreordained and that "what is to be, will be".

Life expectancy is based on the law of averages. It would be the rare case indeed, we suspect, that any person died on the date of expiration of his calculated expectancy. The expectancy tables not only take into consideration the known fact that any person may die prior to his calculated expectancy but also the known fact that he may live far beyond that period. If it were just to abate any damages awarded plaintiff for the period of time he expired before his calculated expectancy, then would not defendant be liable to plaintiff's representatives for any time he lived beyond that expectancy, had he done so?

Defendant's motion falls far short of alleging any fact existing at the time of the trial which could have affected the result of the trial. His death prior to expiration of his calculated expectancy does not alter the fact that his life expectancy at the time of the trial was 25.07 years. The cases cited by defendant are not in point. The motion is overruled.

Finally, defendant contends the award as reduced to $45,000 is yet excessive. In examining this contention we will consider the evidence relating to the nature [47] and extent of plaintiff's injuries from a standpoint favorable to plaintiff.

Plaintiff was born in 1905 (he was forty-six at the time of trial). He attended high school, completing most of the twelfth grade. He had three or four years' experience in operating tractors, graders and trucks. He sold and delivered bread for two and a half years; sold groceries a few months; farmed approximately three years; worked at various other jobs and was a supervisor for W.P.A. for about two years. He had also worked as a metal drawer in zinc smelting plants, and was so working when he was employed by defendant as a locomotive fireman in January, 1943.

A little after seven o'clock the evening of November 7, 1948, the engine which plaintiff was firing was derailed and turned over on its right side. Plaintiff attempted to escape through the left side of the cab, but was thrown twenty-five or thirty feet from the cab window and landed striking his left foot and back on the hard and rocky surface of the right of way. He was momentarily dazed, and suffered pain in his back and left foot. He lay on his back for

about thirty minutes, and was then taken to the station at Alix, thence by ambulance forty miles to a hospital at Ft. Smith. X-rays were taken and sedatives were administered. November 11th, plaintiff was transported to the hospital of the Missouri Pacific Hospital Association at Little Rock, where he remained until December 29th. X-rays were taken and a plaster of Paris cast was put on his left foot. Another cast was put on his body. The latter cast extended from his hips almost up to his neck. The casts were removed in January, 1949, and he was given a corset-like brace which he wore until the latter part of 1949. Beginning in December, 1948, he had used crutches for between eight months and a year. (At the time of trial he walked with a cane and wore a brace.) He was hospitalized in St. Louis from March 28 to April 15, 1949; again in Little Rock, December 27, 1949, to January 23, 1950; and again in St. Louis during four different periods varying from two to nineteen days in 1950. He was an "in-patient" in Missouri Pacific Hospitals at Little Rock and St. Louis for a total of one hundred thirty-eight days. During his periods of hospitalization in 1949 and 1950 he was given diathermy treatments and hydrotherapy, but continued to suffer pain in his lower back and left leg and foot.

A myelogram test, October 17, 1950, performed at St. Mary's Hospital, Minneapolis, Minnesota, and other examinations and X-rays disclosed conditions which, in a physician's opinion, indicated plaintiff had an injured intervertebral disc in the lower back, possibly more than one. November 25, 1950, another myelogram revealed deformities at the fourth lumbar interspace. A protruding fragment of the disc was pressing against a nerve root causing pain throughout the length of the sciatic nerve. The physician referred plaintiff to the Mayo Clinic, Rochester. An operation was performed November 30th. The surgeon found a "protruded intervertebral disc at the 4th lumbar interspace and also a smaller one at the 5th lumbar interspace on the left side". The parts of the discs, "which were protruding and which were definitely degenerated," were removed. The surgical record of the operation recites, "The muscles were retracted on the left opposite the fourth and fifth lumbar vertebrae and sacrum. Muscle spasm was as marked as I have ever seen; it could not even be relieved with curare. A partial hemilaminectomy at the fourth and fifth lumbar interspaces was necessary and a small boggy disk was found at either interspace, the one at the fourth being larger than the one at the fifth. There were many huge epidural vessels which apparently had bled previously and produced adhesions between the nerve roots and posterior ligament. With difficulty, the nerve roots were separated from the adhesions and retracted mesially and the two fair sized disks were removed. Bleeding was controlled with electrocoagulation and gelfoam. The wound was checked for extra bleeding and closed in the usual manner (by first) without

drainage." This was a major surgical procedure. The surgeon considered the operation [48] successful; but another witness, a physician, doubted that there was much improvement effected. Plaintiff was dismissed from St. Mary's Hospital December 11, 1950, and "finally dismissed home" December 13th. Plaintiff's total expense for tests, treatment, surgery and hospitalization in Minnesota was $1032.50. He was not charged for treatment and hospitalization at Missouri Pacific hospitals.

A physician, who examined plaintiff during the course of the trial in April, 1951, testified plaintiff still has a great deal of muscle spasm to the left of the spine in the lumbar region. He has limitation of motion in forward bending, "he bends to fifty per cent of normal in forward bending. In side to side tilting he holds the lower back in that lumbar region practically stiff." There was some anesthesia in the lower left leg. The doctor thought plaintiff's back injuries were permanent. The back continues to be painful when subjected to strain. The doctor believed plaintiff could not again work as a railroad fireman; plaintiff cannot do any work requiring stooping, bending, lifting or pulling; he could do light work which would not strain the back; his condition would somewhat improve, but the improvement would have little effect in correcting "what is missing in that back". Another physician was of the opinion that plaintiff's injuries are of a permanent nature. Plaintiff will continue to suffer with soreness, with episodes of acute pain. The doctor would recommend to plaintiff "that he do work that will not put undue strain on his back".

X-rays of plaintiff's left foot reveal some deformity of the anterior and upper border of the cuboid bone; the bone probably had been fractured, but whatever fracture there may have been has now healed with residual deformity due to hypertrophy.

Plaintiff testified that he has (at the time of trial) hard pains in his lower back; his left foot is not quite as bad; he doesn't sleep well; he doesn't have the right control of himself and he uses a cane to keep from falling; he has not been gainfully employed since he was injured; he has tried to do several little things around the house, but if he bends he is in pain; he formerly played golf, fished and hunted, but now he is unable to do these things. He is not much better than when he was operated on; his back is no better; if he is in the same position too long, he is immediately in pain; likewise, if he steps down too hard, or stands in one position, or walks too far, he is in pain. Sometimes he has headaches continuing for three or four days or a week. Plaintiff is a large man—weighs about two hundred pounds. He has experienced no loss of weight.

Plaintiff's duties as a fireman required him to take care of the coal and water, and keep up steam for the engine. This is heavy work. He stated he had received average monthly earnings of $300

to $350. Plaintiff was paid $3159.17 during the year 1948 prior to his injury November 7th, an average monthly wage of a little more than $308. He said there had been a $30 to $40 per month increase in fireman's pay since he was injured.

In Hayes v. Wabash R. Co., 360 Mo. 1223, 233 S.W. 2d 12, decided in 1950, plaintiff, a railroad brakeman, forty years old (six years younger than plaintiff herein), had a verdict awarding $55,000 for injuries in two occurrences. The trial court required a remittitur of $10,000, and this court required a further remittitur of $7500. Plaintiff's actual earnings for a three-year period averaged about $1900 per year, although he testified that, but for outside interests, he could have earned $350 or $400 a month all of the time. He had no medical expense, and was not subjected to an operation. He had sustained a ruptured disc between the fifth lumbar vertebra and the sacrum, which injury permanently incapacitated him from doing any manual work. His injury left an almost complete limitation of the lower thoracic and lumbar spine. Apparently his condition remained more helpless and more constantly and acutely painful than has that of plaintiff herein. Plaintiff Hayes requires almost constant personal care, and continues the use of sedatives and heat treatments. In Hilton v. Thompson, supra, decided in 1950, this court considered (227 S.W. 2d at pages 684-686) the question of excessiveness of [49] an award of $37,000 and required a remittitur of $7000. Plaintiff Hilton, a member of a bridge-building crew, was fifty-four years old at the time of trial. His average monthly earnings had been about $226. He had sustained three comminuted fractures of the rami of the right pubic bone; a compression fracture of the first lumbar vertebra; and a compression and disintegration of intervertebral discs. These injuries are no doubt more serious and quite as painful as those of plaintiff herein, although plaintiff Hilton apparently had no medical expense, and was eight years older and received a lesser wage than plaintiff Dempsey. We regard the injuries to the pelvis and spine of plaintiff in Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W. 2d 418, decided in 1949, as more grave and incapacitating than the injuries to the back and left foot of plaintiff herein; and we believe plaintiff Dempsey's injuries are not comparable to the shown fracture of the femur and permanent crippling of the left leg and the evidence of injury to the brain and spinal cord of plaintiff in Cruce v. Gulf, M. & O. R. Co., 361 Mo. 1138, 238 S.W. 2d 674. Nor were plaintiff's injuries comparable to the spinal injuries at the neck, probable spinal cord damage and possibility of a subsequent break in the odontoid process of the older plaintiff of greater earning capacity in Warning v. Thompson, Mo. Sup., 249 S.W. 2d 335, decided by Division Number One, May 12, 1952.

Having a regard for the factors to be considered in reviewing the question of excessiveness of awards (Young v. Terminal R. R. Ass'n

of St. Louis, Mo. Sup., 192 S.W. 2d 402), and also recognizing that the trial court has passed directly upon the question in making an order of remittitur (Schaefer v. Transamerican Freight Lines, Mo. Sup., 173 S.W. 2d 20), we are of the opinion that the award is yet excessive in the sum of $7500.

Counsel for both parties have agreed that, due to the death of plaintiff subsequent to submission of the case in this court, the judgment rendered on this appeal be entered as of the date of the submission. Batson v. Peters, Mo. Sup., 89 S.W. 2d 46; Buchanan v. Rechner, 333 Mo. 634, 62 S.W. 2d 1071; Sargent v. St. Louis & S. F. Ry. Co., 114 Mo. 348, 21 S.W. 823; Central Savings Bank v. Shine, 48 Mo. 456; Tuohy v. Novich, Mo. App., 230 S.W. 2d 152, 159. If the duly qualified representative of Jackson C. Dempsey, deceased, files in this court a further remittitur of $7500 within sixty days, the judgment will stand affirmed as of the date of April 24, 1952, in the sum of $37,500 as of the date of the original judgment; otherwise, the judgment is reversed and the cause remanded as of April 24, 1952. All concur.