Marion **DOMERACKI**

v.

**HUMBLE OIL & REFINING CO.,**
**Appellant.**

No. 18886.

United States Court of Appeals,
Third Circuit.

Argued March 29, 1971.

Decided May 18, 1971.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa. (Raymond T. Letulle, Philadelphia, Pa., on the brief), for appellant.

Marvin I. Barish, Freedman, Borowsky & Lorry, Philadelphia, Pa., for appellee.

Before HASTIE, Chief Judge, and SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

A judgment of $270,982 was entered on a jury verdict against appellant shipowner and in favor of appellee, a longshoreman who sustained personal injury while loading a ship in port. The jury accepted appellee's contention that his injury was caused by the unseaworthy condition of the vessel and by the failure of the shipowner to provide a safe place to work.[1]

---

1. The facts are not complicated. Plaintiff-appellee was one of three longshoremen engaged in loading a crate onto the S.S. ESSO LIMA. He contended that his foreman requested, and the ship's mate refused to provide, a boom to lift the crate from the dock, thereby necessitating that the crate be manhandled

Appellant concedes the severity of the injury: appellee suffered herniated discs in his back; only one was corrected by surgery, while the other caused continuing disability. Past loss of earnings amounted to $28,000, medical expenses totaled $3,000, and loss of future earning power over a projected 28 year period approximated $100,000. Appellant contends, however, that the verdict was tainted, and excessive, because the jury (1) failed to adhere to the court's instructions, (2) rendered its verdict under the influence of passion and prejudice purposely induced by appellee's counsel, and (3) deliberated under the mistaken impression that the award would be subject to federal income tax obligations.

### I.

The first assignment of error relates to an incident that occurred in the courtroom at the time the verdict was received. The jury had been given special written interrogatories which, together with the replies, were handed by the forelady to the deputy marshal for transmittal to the court. In submitting the interrogatories, however, the forelady inadvertently included two sheets of paper containing certain written matter. It is conceded that these papers were not a part of the jury's verdict and probably constituted scratch paper utilized by the forelady or others during deliberations in the jury room. The trial judge notified counsel that "these papers had inadvertently come into my possession and that I had glanced at them and seen some figures which would cause me to wonder whether they [the jury] had followed the Court's instructions precisely." Subsequently, the court declared: "Up-

on further reflection I think that what I did was improper in looking at what the jury did, and rather than compound that error, I have impounded these papers. * * * I happen to know, by that inadvertent glance at that piece of paper, how they arrived at [the verdict]. I shall have to do my best to wipe clean from my mind that information which I now have in my head. * * * "

■ Appellant then moved for a new trial, grounding its motion on the theory that a new trial should be granted when it is apparent that the jury has not followed the court's instructions on damages. Although we do not quarrel with this statement of the controlling abstract principle, the circumstances here preclude our reaching this question. Neither a trial court nor an appellate court has the authority to inquire into the jury's decisional processes, even when information pertaining to the deliberations is volunteered by one of the jurors. "[A]fter reception of the verdict and discharge of the jury, testimony of jurors should be incompetent, under the no-impeachment rule * * *, to illuminate the suspicion [of a failure to follow instructions] by inquiring into their mental processes." 6A Moore's Federal Practice § 59.08 [4], at 3804.

■■ Long settled considerations of public policy dictate "that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motives, misconduct during the trial or in the Jury Room, cannot be shown by the evidence of the jurors themselves, as the ground of disturbing the verdict, duly rendered," Capen v. Stoughton, 82 Mass.

---

from the dock to the deck through an opening in the ship's rail. Two removable chains guarded the opening. The lower chain was removed in the loading process, but the upper one could not be removed because it was rusted and frozen. The vessel's mate, although notified of this condition, told the longshoremen

foreman to do the best he could. Plaintiff-appellee was directed to board the ship to lift the upper chain and assist in hoisting the crate through the opening. The injuries occurred when he was holding the crate with one hand and lifting the chain with the other.

(16 Gray) 364, 366 (1860).[2] The sound justification for the concept that "[such] matters all inhere in the verdict itself," Chicago, R.I. & Pac. RR v. Speth, 404 F.2d 291, 295 (8 Cir. 1968), is the salutary desire to protect participants in the jury system from being "harassed and beset by the defeated party. * * * If evidence [obtained from jurors] could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." McDonald v. Pless, 238 U.S. 264, 267–268, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915). In short, the district court, 312 F.Supp. 374, properly concluded that the information to which he accidentally became privy was incompetent to provide a basis for a finding that the jury failed to adhere to the court's instructions.

## II.

■ Appellant also insists that a new trial should be granted due to the prejudice allegedly created when appellee's counsel suggested that the shipowner would have recourse against any third party responsible for the unseaworthy condition of the ship. Upon objection, the court instructed the jury to "ignore" such remarks: "Members of the jury,

you are trying one law suit. You are not here to determine whether the ship has any rights against anybody else." The court previously had told the jury: "You are here to try the case of Marion Domeracki against the Humble Oil and Refining Company. That is the only case you are here to try. Whatever reference may have been made to other litigation, just disregard it. This is the case you are here to try, you are sworn to try, and this is the only one I want you to consider." We are satisfied that these cautionary statements were adequate and that no prejudicial error resulted.

■■ We also find no merit in appellant's additional contention that the jury was improperly influenced by an oblique reference during appellee's closing argument to the financial capacity of Humble Oil.[3] See United States v. Socony-Vacuum, 310 U.S. 150, 237–242, 60 S.Ct. 811, 84 L.Ed. 1129 (1939). In any case, appellant registered no timely objection to the remark.[4] Id. at 239, 60 S.Ct. 811. See Fed.R.Civ.Pro. 46.

## III.

Appellant submitted, and the district court refused, the following point for charge:

I charge you, as a matter of law, that any award made to the plaintiff

---

2. E. g., Farmers Co-Op. Elevator Ass'n Non-Stock v. Strand, 382 F.2d 224, 230–231 (8 Cir. 1967); Complete Auto Transit, Inc. v. Wayne Broyles Eng. Corp., 351 F.2d 478, 480 (5 Cir. 1965); Lohr v. Tittle, 275 F.2d 662, 667 (10 Cir. 1960); Webb v. United States Lines Co., 266 F.2d 611, 612 (2 Cir. 1959); Thedorf v. Lipsey, 237 F.2d 190, 194 (7 Cir. 1956); Northern Pac. Ry. v. Mely, 219 F.2d 199, 201, 202 (9 Cir. 1954); Stiles v. Lawrie, 211 F.2d 188, 189 (6 Cir. 1954).

3. "Now, do you think, ladies and gentlemen, that a company like Humble Oil, a company who has the investigative ingenuity to strike oil in the Alaskan northern slopes, could not find a witness to refute plaintiff's case, if there was such a witness?"

4. Nor did appellant object to what it now characterizes as an "unwarranted appeal to sympathy" during the closing argument.

"And remember this, that your award should be such that if you pass Mr. Domeracki on the street 20 years from now or 25 years from now and you see him, as you will, limping in pain and unable to work, that you don't have to walk on the other side of the street because you can't look him in the eye for what you did or for what you didn't do."

Appellant concedes that this somewhat dramatic statement "[s]tanding by itself * * * may not be prejudicial error." Even read in context with the entire closing, we cannot conclude that this remark, or the closing as a whole, created prejudice to justify reversal.

in this case, if any is made, is not income to the plaintiff within the meaning of the federal income tax law. Should you find that plaintiff is entitled to an award of damages, then you are to follow the instructions already given to you by this Court in measuring those damages, and in no event should you either add to or subtract from that award on account of federal income taxes.

Whether the refusal of this instruction resulted in prejudice sufficient to entitle appellant to a new trial is the question to which we now address ourselves.

It is true, as stated in the requested charge, that awards received by settlement or verdict in personal injury actions are not taxable under the federal income tax laws. Section 104 of the Internal Revenue Code of 1954, 26 U.S.C. § 104 provides:

(a) *In General*—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc.,

expenses) for any prior taxable year, gross income does not include—

\* \* \* \* \* \*

(2) The amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. \* \* \*

But whether this is a fact of which a jury should be apprised, upon a defendant's request for a proper cautionary instruction, is an open question in this Circuit. Other courts, both state and federal, which have considered the question have answered it in different ways.[5] The issue has also generated sharp disagreement among commentators, although a majority appear to favor an appropriately worded charge. [6]

■ Our analysis begins with the elementary rule of damages in personal injuries actions: a plaintiff should be compensated (1) for monies of which he has been deprived and which presumably he would have received had he not been injured, including wages and earnings, past and future; and (2) for the expenses, inconveniences, and suffering

5. For compilations of the pertinent cases, see Nordstrom, "Income Taxes and Personal Injury Awards," 19 Ohio St.L.J. 212, 214 n. 3 (1958); Note, "Income Taxation and Damages for Personal Injuries," 50 Ky.L.J. 601 n. 3 (1962). For additional federal cases, see note 15, *infra.* Hall v. Chicago & N. W. Ry., 5 Ill.2d 135, 125 N.E.2d 77 (1955), states the majority view that it is error to inform the jury that plaintiff's award will not be taxable. Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42 (1952) stands for the minority position that refusal to give an appropriate cautionary instruction is prejudicial error. Other courts have adopted more flexible rules, holding that the giving of an instruction is discretionary with the trial court, Anderson v. United Air Lines, Inc., 183 F.Supp. 97 (S.D.Cal.1960), or that the instruction, while proper, is not mandatory, and that a refusal to give a proper instruction is not reversible error. McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34 (2 Cir. 1960). Finally some of the cases which have found an instruction to be improper can be distinguished on the basis of the wording of the requested charge. In Maus v. New

York, Chicago & St. Louis R. R. Co., 165 Ohio St. 281, 135 N.E.2d 253 (1956), for example, the requested instruction merely adverted to the section 104 exclusion and added that "you must take this fact into consideration in arriving at the amount of your verdict in this case."

6. *Approving an instruction*: II Harper & James, The Law of Torts § 25.12, at 1327–28 (1956); Feldman, "Personal Injury Awards: Should Tax-Exempt Status Be Ignored?" 7 Ariz.L.Rev. 272 (1965); Burns, "A Compensation Award for Personal Injury or Wrongful Death is Tax-Exempt: Should We Tell the Jury?" 14 De Paul L.Rev. 320 (1965); Nordstrom, 19 Ohio St.L.J. 212 (1958), *supra*, note 4; Note, 50 Ky.L.J. 601 (1962), *supra*, note 4; 26 Ford.L.Rev. 98 (1957); 4 U.C.L.A.L.Rev. 636 (1957); 25 U. Cin.L.Rev. 385 (1956); 44 Ky.L.J. 384 (1956); 9 Vand. 543 (1956); 11 Wash. & Lee L.Rev. 66 (1954); 42 Geo.L.J. 149 (1953); 32 Tex.L.Rev. 108 (1953). *Opposing instruction*: 35 N.Car.L.Rev. 401 (1957); 42 Iowa L.Rev. 134 (1956); 8 Ark.L.Rev. 174 (1953); 33 B.U.L.Rev. 114 (1953); 21 U.Chi.L.Rev. 156 (1953).

which have been thrust upon him by virtue of his injuries. The purpose, then of personal injury compensation is neither to reward the plaintiff, nor to punish the defendant, but to replace plaintiff's losses.

Insofar as wages are concerned, an injured plaintiff loses only his net or take-home pay, that is, his gross earnings, less taxes. He does not in fact "lose" his gross earnings. Nevertheless, in the three states and one territory of this Circuit, as in most jurisdictions, the courts hold that the gross earnings of the plaintiff, rather than net earnings after taxes, are admissible as evidence for the jury's consideration in calculating this item of damages. Thus, the jury is presented not with evidence of wages which plaintiff has actually lost, but sums which, in fact, may be considerably higher depending upon his particular income tax bracket.

Defense attorneys have sought to avoid this result in at least two ways.[7] They have attempted to present evidence of the amount of federal income tax that the plaintiff was paying prior to his injuries in order to offset the "gross income" evidence introduced by the plaintiff. Alternatively, they have requested an instruction that any award will not be subject to federal income tax, and that the jury "should not consider such taxes,"[8] or, more specifically, should not "add or subtract" from any award on account of taxes.[9] The avowed purpose of such a request is to discourage a jury from enlarging an award to the extent it erroneously believes that the plaintiff will be called upon to pay income taxes.

We readily recognize the problems which could result from the introduction of income tax evidence. Shifting tax rates, together with other variables, could give rise to great conjecture, at least as to *in futuro* earnings.[10] Indeed, the tax computation itself could completely overshadow the basic issues of liability and damages. Moreover, recovery for pain, suffering and medical expenses is not measured by one's income and, in any case, would probably not be taxable.[11]

Although some courts and writers have confused the evidentiary issue with the question of a cautionary instruction,[12] we believe that the considerations relating to the former issue have

---

7. See Nordstrom, *supra* note 4, 19 Ohio St.L.J. at 212–213.

8. *E. g.*, Dempsey v. Thompson, *supra* note 4, 363 Mo. at 339, 251 S.W.2d at 45.

9. This was the phraseology requested in the instant case and suggested elsewhere. *E. g.*, Nordstrom, *supra* note 4, 19 Ohio St.L.J. at 235; Feldman, *supra* note 5, at 279.

10. Professor Nordstrom recognizes the speculative nature of such evidence but suggests that this factor should not of necessity be defeating.

This conjecture and speculation could be found in such things as: (1) the family status of the injured party in the years to come; (2) possible changes in the exemption and deduction provisions of the tax law; (3) possible changes in the rates of taxation; and (4) possible changes in the cost of living, thus reflecting itself on the income of the plaintiff. These items are speculative. But are they so speculative that we should refuse to let the defendant even try to show them? Indeed, which is more conjec-

tural: the existence of income tax in this country along the pattern that we now know it, or the continuance of the plaintiff's salary during *exactly the same period*? Yet, we have no real difficulty in letting the jury speculate as to the existence of the latter. We will even let the plaintiff try to show that he might have earned *more* salary in the future. If the plaintiff receives the advantage of the speculation in his favor, why do we bar the defendant from even trying to show what appears to be a smaller speculation in his favor?
Nordstrom, *supra* note 4, 19 Ohio St.L.J. at 227.

11. *See* 42 Iowa L.Rev. 134, 137 (1956) and 8 Ark.L.Rev. 174, 177 (1954), suggesting that a tax would be due if medical expenses had been deducted in a prior year and were currently recoverable.

12. *See, e. g.*, Highshew v. Kushto, 235 Ind. 505, 134 N.E.2d 555 (1956); 33 B.U.L. Rev. 114 (1953).

no relevance to the second. The instruction requested in this case would not require the introduction of any additional evidence. No reference to any IRS regulation or to any specific statute would be necessary. No tax expert would need be summoned as a witness. No tax tables would be hauled into the courtroom. No additional computation would be required. In brief, such an instruction would not open the trial to matters irrelevant to traditional issues in personal injury litigation, and thus would in no way complicate the case or confuse the jury.

Moreover, there are positive and persuasive reasons for giving the instruction. We are not unaware of the pervasive impact of taxation—federal, state, and local—in the lives of Americans. It has been properly observed that what we know as men, we should not ignore as judges. We know of the widespread attention given by the media to the tax consequences affecting winners of the Irish Sweepstakes, state-conducted lotteries, and contests conducted on television. We take judicial notice of the "tax consciousness" of the American public.[13] Yet, we also recognize, as did the court in Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42 (1952), that few members of the general public are aware of the special statutory exception for personal injury awards contained in the Internal Revenue Code.

> [T]here is always danger that today's tax-conscious juries may assume (mistakenly of course) that the judgment will be taxable and therefore make their verdict big enough so that plaintiff would get what they think he deserves after the imaginary tax is taken out of it.

II Harper & James, The Law of Torts § 25.12, at 1327–28 (1956). The very purpose of a cautionary instruction is merely to dispel a possible misconception in the minds of the jury that the government will make a valid claim to a portion of the award. Its effect is simply to dissuade juries from improperly increasing the award because of this mistaken belief.

Given the absence of complications that an instruction would engender, the tax consciousness of the American public, and the general lack of knowledge about the statutory exclusion, we hold that in personal injuries actions the trial courts in this Circuit must, in the future, upon request by counsel, instruct the jury that any award will not be subject to federal income taxes and that the jury should not, therefore, add or subtract taxes in fixing the amount of any award.

---

13. [I]t is likely that many jurors, without such an instruction * * * would believe that damage awards are taxable, and would weigh this factor against the defendant. * * * [T]he public press has carried many reports of large sums won on television quiz programs or in lotteries and sweepstakes. These accounts almost always point out that a very large percentage of the winnings must be paid to the government as income tax. It would be natural enough for the layman to conclude that the plaintiff's receipts from the judgment would be taxed.
McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34, 41 (2d Cir. 1960), (*en banc*) (Lumbard, C. J., dissenting).
To ignore the tax element at the present day would be to act in a manner which is out of touch with reality. Nor can I regard the tax element as so remote that it should be disregarded in assessing damages. The obligation to pay tax—save for those in possession of exiguous incomes—is almost universal in its application. That obligation is ever present in the minds of those who are called on to pay taxes, and no sensible person any longer regards the net earnings from his trade or profession as the equivalent of his available income. Indeed, save for the fact that in many cases—though by no means in all cases—the tax only becomes payable after the money has been received, there is, I think, no element of remoteness or uncertainty about its incidence.
British Transp. Comm'n v. Gourley, 3 All E.R. 796, 802 (1955).

We decline, however, to reverse the judgment of the court below. Two important considerations influence this determination. First, the purpose of the rule which we promulgate for prospective application [14] in this Circuit is to remove the possibility that juries will increase awards based on mistaken considerations of tax consequences. In the case at bar, however, there is no evidence that the jury was in fact so motivated,[15] and because of the settled rule, heretofore discussed, that the sanctity of jury deliberations may not be invaded subsequent to the rendition of the verdict, any inquiry is now foreclosed.

Secondly, we recognize that our approach to this problem represents a new view in this judicial circuit as well as in other Circuits.[16] Indeed, the position we adopt has been accepted by only a handful of state jurisdictions. In this situation, it cannot be said that the trial court erred in refusing the instruction at the time it was proffered. Paying even the most scrupulous attention to the sometimes subtle shifting of appellate winds, the district court could not have been expected to forecast the decision we reach here.

■ In conclusion, after considering all the arguments presented by appellant, we hold that there was no reversible trial error. Moreover, we cannot say that the amount of the verdict shocks the conscience of the court.

The judgment of the district court will be affirmed.

14. The Supreme Court of Missouri in Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42 (1952), made prospective only its overruling of the refusal to give a requested cautionary instruction. Our action in giving prospective effect to our ruling is based on our general supervisory power over the district courts in this Circuit. See McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); United States v. Fioravanti, 412 F.2d 407, 420 (3 Cir. 1969).

15. It was this factor that led the Second Circuit to conclude that the failure to give the charge was not reversible error. Acknowledging that the instruction "imposes no new burdens on the jury and there is nothing speculative about it," still Judge Friendly reasoned that

[b]efore an appellate court should hold that failure to give such a cautionary instruction was reversible error, there ought to be evidence either that juries in general increase recovery on this account or that the particular jury did so. The published material on the former point is too slender to support a judgment that juries do this generally, and there is nothing to suggest that this one did.

McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34, 39 (2d Cir. 1960) (en banc).

16. Our research discloses that three Circuits have validated refusals to give a cautionary instruction. Only the Second Circuit, however, has recorded its reasons, and its most recent analysis of the question resulted in a 3–2 en banc decision. McWeeney v. New York, N. H. & H. R. R., supra, notes 12 and 14. Both opinions in the Fifth Circuit were per curiams, and both disposed of the issue in one sentence. Cunningham v. Bay Drilling Co., 421 F.2d 1398, 1399 (5th Cir. 1970): "We believe the refusal [of the instruction] was proper." Prudential Ins. Co. v. Wilkerson, 327 F.2d 997, 998 (5th Cir. 1964): "We are of the opinion [that] the court properly refused to instruct the jury [on the issue]." The Sixth Circuit pronouncements are equally cryptic. In New York Central RR v. Delich, 252 F.2d 522, 527 (6th Cir. 1958), the court concluded simply that "[i]t was not error" to refuse the instruction. In a subsequent decision, the court cited Delich and said that no case relied upon by the appellant "stands for a contrary holding." Payne v. B. & O. R. R., 309 F.2d 546, 549–550 (6th Cir. 1962).