GERIS, *Respondent,*

*v.*

BURLINGTON NORTHERN, INC., *Appellant.*

(No. 405-867, SC 24173)

561 P2d 174

Delbert W. Johnson, Portland, argued the cause for appellant. With him on the briefs was Roger J. Crosby, Portland.

George M. Joseph, Portland, argued the cause for respondent. With him on the brief were Carlton R. Reiter and Zig I. Zakovics, of Reiter, Bricker & Zakovics, P.C., Portland.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Bryson and Sloper, Justices.

HOWELL, J.

## HOWELL, J.

This is an action which was brought in two counts under the Federal Employers Liability Act[1] and the Safety Appliance Act[2] for personal injuries which plaintiff sustained while employed by the defendant railroad. The substance of both counts related to an allegedly defective hand brake on one of defendant's cars. Plaintiff was injured when he fell between two moving cars while attempting to release the hand brake. A wheel passed over him, resulting in the amputation of his right leg at the hip and the fracture of his left leg.

The jury returned a verdict for plaintiff in the amount of $751,000, and judgment was entered thereon. On appeal, defendant contends that the trial court erred in failing to grant a remittitur of a portion of the jury's award.[3] Defendant also assigns as error the trial court's refusal to allow evidence of the impact of income taxes to be considered in computing plaintiff's loss of earning capacity, as well as the court's refusal to instruct the jury that plaintiff's award would not be subject to taxation. Finally, defendant contends that the court erred (1) in its instructions relating to defendant's duty under the Safety Appliance Act, (2) in refusing to instruct the jury that punitive damages were not recoverable, and (3) in submitting confusing special interrogatories to the jury.

■ In cases arising under federal law, such as the Federal Employers Liability Act and the Safety Appliance Act, state courts are bound to follow federal substantive law but are free to follow their own practices as to matters which are strictly procedural. *See, e.g., McMahan v. States Steamship,* 256 Or 554,

---

[1] 45 USC § 51 et seq. (1970).

[2] 45 USC § 11 (1970).

[3] Defendant's brief does not comply with the rules of this court relating to assignments of error on appeal, Rules 6.18 and 6.21. As a result, the organization is confusing and defendant's arguments are hard to follow. It is also difficult to relate several of defendant's contentions to specific assignments of error.

474 P2d 515 (1970), *cert. denied* 401 US 956 (1971); *Hust v. Moore-McCormick Lines, Inc.,* 180 Or 409, 177 P2d 429 (1947).

■ The decision on remittitur is initially committed to the discretion of the trial court, and that court's ruling will not be reversed on appeal unless this court is persuaded that there was a clear abuse of discretion. *Oliver v. Burlington Northern,* 271 Or 214, 531 P2d 272 (1975); *McMahan v. States Steamship, supra. See also Staples v. Union Pacific R.R. Co.,* 265 Or 153, 155, 508 P2d 426 (1973):

> "* * * [T]he trial court will not be reversed for denying remittitur unless the appellate court is of the opinion that the amount of the verdict is 'outrageous,' 'shocking' or 'monstrous.' * * *."

■ We have considered the evidence relating to both the extent of plaintiff's injuries and the impairment of his earning capacity. Suffice it to say that we do not feel that the verdict in this case meets the test outlined above. The record indicates that the trial court applied the correct standard in ruling on defendant's motion, and we find no abuse of its discretion in this case.

A more difficult problem is presented by defendant's arguments that the trial court erred in refusing to admit evidence of the effect of income taxes on plaintiff's earning capacity and in refusing to instruct the jury that their award would not be subject to federal income taxes. Although these arguments are related, they involve issues which are analytically distinct, and we will treat them separately.

Defendant sought to elicit testimony relating to the effect of taxation on plaintiff's damages during the cross-examination of plaintiff's expert economist. Plaintiff objected, and the objection was sustained. Although defendant did not point out the legal basis for his offer of proof for the benefit of the trial court, plaintiff stipulated that the offer of proof was sufficient, and, therefore, we will consider it on appeal.

[ 384 ]

■ Whether future income taxation should be taken into account in calculating plaintiff's probable future earnings which will be lost as a result of defendant's conduct is a substantive question on which federal law is controlling in cases like this one. *Burlington Northern, Inc. v. Boxberger,* 529 F2d 284, 289 (9th Cir 1975). *See also McMahan v. States Steamship, supra; Hust v. Moore-McCormick Lines, Inc., supra.* When federal substantive issues arise in state courts, United States Supreme Court precedents are, of course, controlling. *See Pooschke v. U.P. Railroad,* 246 Or 633, 426 P2d 866 (1967). *See also United States ex rel Lawrence v. Woods,* 432 F2d 1072, 1075-76 (7th Cir 1970). However, since there are no Supreme Court decisions which have discussed the issue which is now before us, we have considered the matter thoroughly and carefully reviewed the decisions of the lower federal courts.[4] It is clear from our review of these decisions that the prevailing federal rule is that which was first articulated by Justice Friendly in *McWeeney v. New York, N.H. & H. R.R.,* 282 F2d 34 (2d Cir), *cert. denied* 364 US 870 (1960), and which has been further delineated in *Petition of Marina Mercante Nicaraguense, S.A.,* 364 F2d 118 (2d Cir 1966), *cert. denied* 364 US 1005 (1967); *Le Roy v. Sabena Belgian World Airlines,* 344

---

[4] At least 29 state courts have also considered this specific question. The vast majority hold that evidence of the impact of taxation on plaintiff's damages is not admissible. Only three state courts have held that such evidence should be considered. *See Huddell v. Levin,* 395 F Supp 64, 85-86, n.23 (D NJ 1975) (collecting cases). The three minority jurisdictions are Connecticut, New Jersey, and Iowa. *See Floyd v. Fruit Indus. Inc.,* 144 Conn 659, 136 A2d 918 (1957); *Avant v. Clifford,* 67 NJ 496, 314 A2d 629 (1975); *Adams v. Deur,* 173 NW2d 100 (Iowa 1969). *Cf. Myers v. Cessna Aircraft,* 275 Or 501, 525, 553 P2d 355 (1976). However, most commentators who have discussed the issue tend to favor the admissibility of evidence relating to the impact of taxation, at least under some circumstances. *See, e.g.,* 2 Harper & James, Law of Torts 1326-27, § 25.12 (1956); Morris & Nordstrom, *Personal Injury Recoveries and the Federal Income Tax Law,* 46 ABA J 274 (1960); Stripp & Rowland, *Taking Account of the Impact of Income Taxes in Personal Injury and Wrongful Death Cases,* 36 Ins Counsel J 231 (1969); Note, 56 Minn L Rev 503 (1972). *See also* authorities cited in *Burlington Northern, Inc. v. Boxberger,* 529 F2d 284, 292, n.2 (9th Cir 1975).

F2d 266 (2d Cir), *cert. denied* 382 US 878 (1965); and *Montellier v. United States,* 315 F2d 180 (2d Cir 1963).

The *McWeeney* rule is a flexible one. That court held that income taxes should not be deducted in "the great mass of litigation at the lower or middle reach of the income scale," but that "at the opposite end of the income spectrum," failure to deduct for taxes could result in an award which "would be plainly excessive." 282 F2d at 38-39. This has been interpreted to mean that income taxes should be taken into consideration only if the impact of those taxes will have a "significant and substantial effect in the computation of probable future contributions." *Cox v. Northwest Airlines, Inc.,* 379 F2d 893-96 (7th Cir 1967), *cert. denied* 389 US 1044 (1968). *See also Burlington Northern, Inc. v. Boxberger, supra* at 290:

> "* * * Thus, in subsequent cases, *McWeeney* has been interpreted to hold that in cases wherein the injured parties' income is beyond the 'lower or middle reach of the income scale' (282 F2d at 39), and consequently the proportional impact of future income taxation is quite substantial, it is proper, in the fair calculation of loss of future earnings, that future income taxes be deducted."

The flexible *McWeeney* approach has been followed by nearly every other circuit which has considered this issue, and, contrary to defendant's position, no federal court has ever held that evidence of the projected effect of taxes on plaintiff's damages is *always* admissible. *See, e.g., Blue v. Western Ry. of Alabama,* 469 F2d 487, 496 (5th Cir 1972), *cert. denied* 410 US 956 (1973); *Petition of United States Steel Corp.,* 436 F2d 1256, 1274 (6th Cir 1970), *cert. denied* 402 US 987 (1971); *Cox v. Northwest, supra; Burlington Northern, Inc. v. Boxberger, supra. See also Boston & Maine R.R. v. Talbert,* 360 F2d 286, 291 (1st Cir 1966) (deduction for taxes not allowable); *United States v. Sommers,* 351 F2d 354, 360 (10th Cir 1965) (a matter for the trial court's discretion); *Chicago & N.W. Ry. Co. v. Curl,* 178 F2d 497, 502 (8th Cir 1949) (evidence of tax effect inadmissible).

Although there is dicta in *Boxberger* which suggests that evidence of the impact of taxation should be considered in all cases (529 F2d at 294), the *Boxberger* court clearly held that the flexible *McWeeney* rule would be followed in the Ninth Circuit as well:

> "* * * In line with the Second Circuit, we hold that in cases wherein the gross earnings in question are beyond 'the lower or middle reach of the income scale,' and consequently 'the impact of income tax has a significant and substantial effect in the computation of probable future contributions' to the beneficiaries, both parties should be permitted to introduce evidence of the extent to which future earnings would have been taxed." 529 F2d at 294.

Defendant's reliance upon *Boxberger* in support of a different rule is therefore clearly misplaced.

Many reasons have been advanced to explain why the *McWeeney* standard must remain flexible. The computations involved and the various assumptions to be considered are extremely complex. Present progressive tax rates may be projected into the future, but they cannot realistically be applied to future wages which have been projected to rise as a result of inflation without an offsetting computation for the periodic adjustment of exemptions, deductions and income tax brackets which has historically occurred in response to inflationary trends.[5] Moreover, assumptions and adjustments must be made to account for the projected effect of these exemptions and deductions on a particular plaintiff: factors which may vary as a result of changes in family circumstances and/or congressional policy.[6] Similar assumptions and adjustments must also be made with respect to the effect of

---

[5] *See, e.g.,* The Tax Reform Act of 1969, Title VIII, Pub L No. 91-172, 83 Stat 675 (1969). *See also Huddell v. Levin,* 395 F Supp 64, 89-90 (D NJ 1975).

[6] *See, e.g., McWeeney v. New York, N.H. & H. R.R.,* 282 F2d 34, 36 (2d Cir), *cert. denied* 364 US 870 (1960); Peck & Hopkins, *Economics and Impaired Earning Capacity in Personal Injury Cases,* 44 Wash L Rev 351, 371-72 (1969).

state income taxes on plaintiff's future earnings. As one court has stated:

"* * * There is certainly no speculation concerning the incidence of taxation, but the amount of tax which might be assessed against a given individual is a truly complex question. The number of possible exemptions, the type and amount of deductions, the effect of tax-exempt earnings, tax shelters and investment earnings, together with a host of other variables, make any realistic prediction impossible. Unlike economic growth, which is controlled by reasonably fixed principles of economic management, taxes are the creation of a political body, and therefore subject to change from session to session in Congress. Since the enactment of the Sixteenth Amendment, tax rates have changed an average of every three years, and more frequently in recent years." *Huddell v. Levin,* 395 F Supp 64, 89 (D NJ 1975).

An even more significant consideration, however, is the offsetting effect of income taxes on the interest which the discounted award is presumed to be generating. If projected future wages are to be reduced by the projected effect of taxation before those wages are discounted to present value, the present value of those projected wages must then be increased to compensate for the effect of projected taxes on the interest to be generated by the lump sum award over plaintiff's projected work life. In other words, to the extent that interest on the award is taxed, the award itself must be larger in order to provide the same after-tax benefits to plaintiff during his lifetime. Otherwise, plaintiff will be undercompensated because he will not receive the full benefit of his projected net earnings. *See, e.g., McWeeney v. New York, N.H. & H. R.R., supra* at 37:

"* * * [T]he product of plaintiff's lost earning power ex-tax and his expectancy will have been discounted to produce 'that sum of money which if invested at a fair rate of return will yield annually the amount by which the plaintiff's earning capacity has been lessened and which will at time of end of the plaintiff's life expectancy be reduced to zero. This takes into account the fact that

[ 388 ]

money earns interest each year; and it should be remembered that *this interest is taxable.* Therefore, if a court is going to use income after taxes as a measure of plaintiff's loss, it must add back the taxes which would be due on the interest earned—else the award would not fully compensate for the loss.' " [*Quoting* Morris & Nordstrom, *Personal Injury Recoveries and the Federal Income Tax Law,* 46 ABA J 272, 328 (1960).] (Emphasis in original)

*See also Plourd v. Southern Pac. Transp. Co.,* 266 Or 666, 681, 513 P2d 1140 (1973); Nordstrom, *Income Taxes and Personal Injury Awards,* 19 Ohio St L J 212, 227-28; Peck & Hopkins, *supra n.* 6 at 372.[7]

The magnitude of this net tax adjustment (the adjustment for taxes on future wages less the adjustment for taxes on interest earned by the damage award) will depend upon the particular circumstances of each individual case. Moreover, under some circumstances, an estimate of loss which includes the tax computation could possibly be larger than an estimate of loss which excludes tax considerations. Whether the taxed or untaxed estimate is larger, and to what extent, will depend upon a number of factors. Among these are the length of plaintiff's projected work life, the magnitude and progressivity of projected tax rates, the amount of untaxed income (such as fringe benefits), the current level of plaintiff's income, and the projected rate of wage growth in plaintiff's occupation.[8]

---

[7] In personal injury cases in which the plaintiff's earning capacity is merely diminished rather than destroyed, the above net tax calculation would actually have to be made twice. This is because in such impaired earnings cases plaintiff's post-injury earning capacity must be subtracted from his pre-injury earning capacity in order to arrive at plaintiff's actual economic loss. Therefore, the above net tax adjustment would have to be calculated both on plaintiff's pre-injury earning capacity and on his smaller post-injury earning capacity in order to compute plaintiff's actual damages.

[8] According to plaintiff's brief, the net tax-adjusted present value of future earnings will not be significantly lower and may actually tend to be *greater* than the non-tax-adjusted present value if the plaintiff was in a low or moderate tax bracket and his projected future earnings would have been spread out over a relatively long work life. This is because tax rates are

■ As the federal courts have recognized, the danger is that trials will be needlessly prolonged and the jury will be so overwhelmed by the confusing mass of detailed computations, deductions, adjustments and projections, and by the conflicting conclusions drawn from this evidence by the experts on either side, that they will lose sight of their primary responsibility: determining the underlying issue of liability and computing a reasonably fair estimate of the plaintiff's loss. *See, e.g., McWeeney v. New York, N.H. & H. R.R., supra* at 37:

> "* * * [B]y imposing on the jury a task that the jury cannot reasonably be expected to perform, we would be likely to impair the quality of its performance in areas of its true competence."

*See also Huddell v. Levin,* 395 F Supp 64, 90 (D NJ 1975):

> "Not only would the complications inherent in income tax considerations impair and perhaps nullify the jury's true area of competence in determining disputed issues of fact, but it would pose a nearly impossible task upon the trial judge in articulating the tax considerations in a comprehensible jury charge."

*Accord, Domeracki v. Humble Oil & Refining Co.,* 443 F2d 1245, 1250 (3d Cir 1971):

> "Indeed, the tax computation itself could completely overshadow the basic issues of liability and damages."

■ When admittedly relevant evidence has a greater tendency, on balance, to frustrate rather than to promote the ultimate ends of justice, the trial court

---

progressive and, therefore, taxes on the interest earned on plaintiff's damage award will be comparatively high initially and will decline gradually as the principal is slowly invaded and earns gradually less income throughout the period of investment. Since the period of high taxation occurs in the near future, its present value is relatively large and the damage award must be increased substantially in order to correct for this factor. This effect is magnified if a substantial portion of plaintiff's pre-injury earnings were untaxed fringe benefits, for although the income in the form of fringe benefits would not have been taxed, interest earned on the present value of those benefits will be taxed.

must exercise its discretion and refuse to admit it. *See, e.g.,* McCormick on Evidence 438-441, § 185 (1972). As a result, the federal courts have ruled that income taxes must first be shown to have "a significant and substantial effect" on the computation of damages before evidence of their impact will be admitted. *See also* Nordstrom, *Income Taxes and Personal Injury Awards,* 19 Ohio St L J 212, 230 (1958) ("[B]efore a court allows evidence of the taxes that would have been payable had the plaintiff not been injured, it should examine carefully the difficulties that would be presented.").

We fully recognize the difficulties that the flexible *McWeeney* rule is bound to pose at the trial level.[9] However, as we have previously noted, we are bound to apply federal law on issues of this character. Moreover, as the Second Circuit pointed out in a subsequent decision, *Petition of Marina Mercante Nicaraguense, S.A., supra,* the flexible *McWeeney* rule, despite its disadvantages, may be better than either of the available alternatives:

"The *McWeeney* rule, like many a compromise, is not very satisfactory as a solution save in the important sense of being more acceptable than either of the polar proposals. Although the opinion recognized the impossibility of drawing a bright line that would show just when income had reached a level requiring some deduction to be made, it did not leave trial courts wholly without guidance. We said, in a passage previously quoted, that deduction should not be made in 'the great mass of litigation at the lower or middle reach of the income scale' and that 'the line was not approached' by a bachelor earning $4,800 a year. The illustrative examples where a deduction would be required were the cases of a plaintiff with 'potential earnings of $100,000 a year,' and the House of Lords decision, British Transp.

[9] These dificulties were also considered by the *McWeeney* court, which noted that its rule "lacks precision and elegance; but we cannot disregard the practicalities of judicial administration and 'the law is untidy as life with which it deals.' Just where the line should be drawn must be left, as so much is, to the good sense of trial judges * * *." 282 F2d at 39, *quoting* Justice Felix Frankfurter, Reminiscences 21 (1960).

Comm'n v. Gourmley, [1956] A.C. 185, where income taxes would have taken 82% of the estimated earnings. * * *" 364 F2d at 126.

In applying the federal *McWeeney* rule to this case, we have reviewed the arguments and calculations made by both sides in their briefs as to whether the impact of taxation would have a significant and substantial effect on this plaintiff's damages. However, it should be noted at the outset that on this issue, as in any other evidentiary area, the burden is on the party offering the evidence to show that it is admissible. Therefore, in accordance with the federal rule, the defendant railroad had the burden of demonstrating that under the particular circumstances of this case the impact of taxation would be significant and substantial enough to overcome the dangers and disadvantages of an inquiry into this area.

In our view, no such showing was made. On the contrary, the evidence indicates that plaintiff, a young married man, had a relatively moderate projected annual income as a railroad switchman (approximately $13,800 in 1975) and had a relatively long projected work life (35 years) throughout which this income would be spread.[10] Consequently, it appears unlikely that the tax-adjusted present value of his future wages would be substantially less than the non-tax-adjusted present value. Moreover, a substantial portion of plaintiff's projected future income, approximately 17 per cent, was in the form of untaxed fringe benefits. As we previously noted, although wages in the form of fringe benefits would not have been taxable, the interest generated by that portion of the jury's award will be taxable. When this offsetting tax effect is

---

[10] The evidence indicates that plaintiff would have been earning a projected annual income of approximately $76,000 at the end of the 35-year period. However, most of this increase was apparently due to the projected effect of inflation on wage scales throughout the economy. Historically, Congress has responded to such inflationary trends by periodically raising tax brackets to reflect the real value of current wages. *See* n. 5, *supra.* Therefore, in the long run, inflationary wage increases will probably not result in a proportionally higher rate of taxation.

taken into consideration, it further reduces the impact of taxation' on plaintiff's damages. Therefore, in applying the *McWeeney* rule to the facts of this case, we conclude that the defendant railroad has not demonstrated that the impact of taxation would have had a substantial effect in reducing plaintiff's damages.[11]

This conclusion is consistent with the decisions reached by the federal courts in applying the flexible *McWeeney* rule to other cases, at least if we bear in mind the effects of inflation over the past 10 or 15 years. *Compare Petition of Marina Mercante Nicaraguense, S.A., supra* (tugboat workers with annual incomes of $11,500 in 1966 dollars and work life of about 30 years: evidence of tax impact inadmissible); and *Montellier v. United States, supra* (reporter earning $11,150 per year in 1960 dollars and work life of about 30 years: no error to refuse evidence of tax impact) *with Cox v. Northwest Airlines, Inc., supra* (army captain earning $15,655 per year in 1963 dollars for 13 years: impact of tax need not be considered, but tax effect should be considered on annual earnings of $20,608 for 20-year retirement period); *Le Roy v. Sabena Belgian World Airlines, supra* (geologist's earnings of $16,000-$25,000 in 1964 dollars over 21-year period: not error to consider tax effect—a matter for trial court's discretion); *and Burlington Northern, Inc. v. Boxberger, supra* (railroad fireman earning $18,058 in 1975 dollars to $40,000 maximum over 34-year work life: evidence of tax effect should have been admitted).

Therefore, in light of the complexity of the problems which such evidence would have raised, and in view of the moderate level of plaintiff's earnings, we hold that the trial court did not abuse its discretion in

---

[11] According to the calulations made by plaintiff's economist in his brief, in this case the net tax-adjusted present value of plaintiff's future earnings would actually have been slightly greater than the non-tax-adjusted value which was utilized at trial.

refusing to admit evidence concerning the net effect of taxation on this plaintiff's future earning capacity.

■ Defendant also contends that the trial court erred in refusing to give the following requested instruction:

"I instruct you, as a matter of law, that any award made to the plaintiff in this case, if any is made, is not income to the plaintiff within the meaning of the Federal Income Tax Law."

As we have already noted, this is an entirely distinct issue from that which we have previously discussed. The requested instruction does not relate to the impact of taxation on plaintiff's future wages and requires no complex calculations. It concerns only the effect of the tax laws on plaintiff's award in the year in which it is received. The purpose of such a cautionary instruction is merely to dispel any misconceptions which the jurors might hold on this subject.

Since the requested instruction was plainly a correct statement of the law, *see* Internal Revenue Code of 1954, § 104, 26 USC § 104 (1970), it would not have been error to give it. However, the issue presented on appeal is whether the failure to give that instruction constitutes reversible error under the facts of this case.

Our own court, in previously ruling on this same issue, has held that the failure to give a similar instruction was not reversible error. *Plourd v. Southern Pac. Transp. Co.,* supra. This is the uniform rule in almost all other state courts as well, *see* Annot., 63 ALR2d 1393 (1957) *and* ALR2d Supp. Service. It prevails even in jurisdictions which allow evidence of the impact of taxation on plaintiff's damages to be admitted. *See Gorham v. Farmington Motor Inn, Inc.,* 159 Conn 576, 271 A2d 94, 97 (1970). The only apparent exception to this rule in state courts is *Dempsey v. Thompson,* 363 Mo 339, 251 SW2d 42 (1952). However, in *Dempsey* the court made its ruling prospective only.

In contrast to their near unanimity in following the *McWeeney* rule, the federal courts which have considered whether this form of cautionary instruction should be given have not ruled uniformly. Four circuits, the Second, the Fifth, the Sixth and the Tenth, have held that the failure to give similar instructions did not amount to reversible error. *See Nichols v. Marshall,* 486 F2d 791 (10th Cir 1973); *Elston v. Shell Oil Co.,* 481 F2d 608 (5th Cir 1973); *McWeeney v. New York, N.H. & H. R.R., supra* at 39; *New York Central R.R. v. Delich,* 252 F2d 522 (6th Cir 1958). The Eighth Circuit has twice specifically refused to decide this issue. *See Rouse v. Chicago, R.I. & Pac. R.R.,* 474 F2d 1180, 1183 (8th Cir 1973); *Raycraft v. Duluth, Missabe & Iron Range Ry.,* 472 F2d 27 (8th Cir 1973). Two other circuits, the Third and the Ninth, have held that such an instruction must be given in future cases, but each refrained from ruling that the failure to give the instruction in the case before it was sufficient to require a reversal. *See Burlington Northern, Inc. v. Boxberger, supra* at 297; *Domeracki v. Humble Oil & Refining Co.,* 443 F2d 1245, 1252 (3d Cir), *cert. denied* 404 US 883 (1971).

In *Domeracki* the Third Circuit noted the benefits of giving an instruction which would inform the jury that their award would not be taxable as income to plaintiff in the year in which it is received:

> "The very purpose of a cautionary instruction is merely to dispel a possible misconception in the minds of the jury that the government will make a valid claim to a portion of the award. Its effect is simply to dissuade juries from improperly increasing the award because of this mistaken belief." 443 F2d at 1251 (Citations omitted.)

In *Boxberger,* the Ninth Circuit quoted the above language with approval and concluded that:

> "* * * The benefits of informing the jury of the true tax consequences are so clear, and the burden in terms of time and the possibility of confusion so minimal, that we believe the balance is overwhelmingly in favor of giving

such an instruction. To put the matter simply, giving the instruction can do no harm, and it can certainly help by preventing the jury from inflating the award and thus overcompensating the plaintiff on the basis of an erroneous assumption that the judgment will be taxable. Therefore, in future personal injury actions brought under the F.E.L.A. in our Circuit, the trial courts, at least when appropriately requested, must instruct juries that any award made for lost future earnings is not subject to personal income taxes." 529 F2d at 297.

We are in general agreement with the sentiments expressed by the Third and Ninth Circuits. Since the jury would simply be instructed that under federal income tax law any damages awarded to plaintiff would not be taxable as income in the year received, there is little danger that the instruction would lead to any confusion or unnecessary delay. Therefore, in our view, the benefits which may be gained from such an instruction would not be offset by any countervailing considerations.[12]

We conclude that, at least in future actions arising under federal substantive law, an instruction cautioning the jury not to increase or decrease plaintiff's award for any imagined impact of taxes should be given when requested. Although cautionary instructions are usually held to be discretionary with the trial court, we believe that this discretion should be exercised in favor of giving the instruction.

However, we have been unable to discover any case, state or federal, in which the trial court has been reversed and a new trial ordered solely on the grounds that the court failed to instruct the jury that any

---

[12]This view is also supported by most commentators who have considered the question. *See, e.g.,* 2 Harper & James, The Law of Torts 1327-28, § 25.12 (1956); Feldman, *Personal Injury Awards: Should Tax-Exempt Status be Ignored?,* 7 Ariz L Rev 272 (1965); Morris & Nordstrom, *Personal Injury Recoveries and the Federal Income Tax Law,* 46 ABA J 274 (1960); Nordstrom, *Income Taxes and Personal Injury Awards,* 19 Ohio St L J 212 (1958). *See also* authorities cited in *Burlington Northern, Inc. v. Boxberger,* 529 F2d 284, 296 n. 14 (9th Cir 1975); *DeBose v. Trapani,* 295 So 2d 72, 74-75 n. 2 (La App 1974); *Coleman v. New York City Transit Authority,* 37 NY2d 137, 371 NYS 2d 663, 332 NE2d 850, 857-58 n. 3 (1975).

damages awarded would not be treated as income in the year received. Thus, in *Boxberger,* the instruction was required "in future personal injury actions brought under the F.E.L.A." 529 F2d at 297. The *Boxberger* court ordered a reversal and a new trial as a result of the trial court's exclusion of evidence of the impact of taxation on plaintiff's damages. *Id.,* at 295. Although the instruction issue may have contributed to that result, it was not held to be an independent basis for reversal. Moreover, in *Domeracki,* the court specifically declined to reverse and held that their ruling should be applied prospectively only. 443 F2d at 1252. Similarly, in *Dempsey v. Thompson, supra,* the Missouri court held that a similar cautionary instruction should be given in future cases, but refused to reverse the case before it at that time. 251 SW2d at 45-46.

We believe that the same procedure is appropriate in this case. There is absolutely no indication that the failure to give defendant's requested instruction resulted in an excessive verdict in this case or prejudiced the defendant's rights in any other way. Therefore, in light of our previous decision in *Plourd v. Southern Pac. Transp. Co., supra,* we are not disposed to reverse this case on these grounds alone.

██ Defendant also contends that the court erred in refusing to instruct the jury that it could not award punitive damages.[13] No issue of punitive damages was raised by the pleadings in this case, and none of the evidence presented related to that issue. Defendant contends that the closing argument by plaintiff's counsel improperly implied that the defendant railroad had acted in bad faith in its conduct of this

---

[13]The requested instruction was stated as follows:

"If, under the Court's instructions, you should find that plaintiff is entitled to a verdict, in fixing the amount of your award you may not include in or add to an otherwise just award any sum for the purpose of punishing the defendant or to set an example. Nor does the law permit you to include in your award any sum for the payment of court costs or attorney fees."

[ 397 ]

lawsuit and that this argument was intended to create a punitive atmosphere within the jury room. However, the court did instruct the jury that it was their duty "to weigh the evidence calmly and dispassionately and to resolve all of the issues in the case upon their individual merits. You are never in this or any other case to allow bias or sympathy or prejudice to affect your deliberations * * *."

Clearly there was no error in refusing defendant's requested instruction on punitive damages.

■ Defendant's next assignment of error concerns certain special interrogatories which were submitted to the jury. Essentially, defendant's argument is that Interrogatories No. 2 and No. 3 were duplicatory and must have been confusing to the jury. The two interrogatories were similar in that both dealt with the issue of causation. However, the court clearly instructed the jury that they were to answer Interrogatory No. 2 only if they answered "No" to Interrogatory No. 1. They were further instructed to answer No. 3 only if they answered "Yes" to Interrogatory No. 1.[14] Their answers to these interrogatories show that the jury followed these instructions and was not confused by the similarity of the two interrogatories in question.

■ Defendant's final assignment of error relates to the

---

[14] "INTERROGATORY NO. 1: Has the plaintiff proven that the box car was not equipped with an efficient hand brake and that therefore, the defendant violated the Safety Appliance Act?

Answer: _____

(If you answered Interrogatory No. 1 'Yes', go directly to Interrogatory No. 3. If your answer to Interrogatory No. 1 is 'No', answer Interrogatory No. 2, and skip No. 3.)

"INTERROGATORY NO. 2: Did the attempted operation of the hand brake release lever cause or contribute to plaintiff's injuries?

Answer: _____

"INTERROGATORY NO. 3: If your answer to Interrogatory No. 1 was 'Yes', did that violation of the Safety Appliance Act cause or contribute to the cause of plaintiff's injuries?

Answer: _____"

[ 398 ]

court's instruction on defendant's duty under the Safety Appliance Act. The essence of this assignment is that the court's use of the term "absolute" in describing defendant's duty to equip its cars with efficient hand brakes created an impression that there was no defense to this cause of action.[15]

The Safety Appliance Act provides that:

"It shall be unlawful for any common carrier * * * to haul, or permit to be hauled or used on its line, any car * * * not equipped with * * * efficient hand brakes * * *." 45 USC § 11 (1970).

Under the Act, the railroad is liable for injuries caused by defective or inefficient brakes which cause or contribute to plaintiff's injury. Liability under the Safety Appliance Act is not based on negligence and contributory negligence is not a defense. *Urie v. Thompson,* 337 US 163, 69 S Ct 1018, 93 L Ed 1282 (1949); *Myers v. Reading Co.,* 331 US 477, 67 S Ct 1334, 91 L Ed 1615 (1947). In the *Myers* case, the Supreme Court described defendant's duty under the Act as follows:

"The respondent is not subject, as has been suggested, to an absolute liability to its employees comparable to that established by a workmen's compensation law. As an interstate common carrier, however, it is subject to liability for injuries to its employees resulting from its violation of its absolute duty to comply with the Safety Appliance Acts." 331 US at 485.

This statement is essentially the same as that made by the trial court in instructing the jury, and we find no error in the instructions as given.

Affirmed.

---

[15] The pertinent part of this instruction was as follows:

"This law imposes on a railway, such as the Defendant, an absolute duty to equip its cars with efficient hand brakes and to maintain the brakes in efficient operating condition."