ROSA, *Respondent,*
*v.*
BURLINGTON NORTHERN, INC., *Appellant.*
(No. 411-015, SC 24, 429)

561 P2d 629

Delbert W. Johnson, Portland, argued the cause and filed the brief for appellant.

George M. Joseph, Portland, argued the cause for respondent. With him on the brief were Douglas S.

Querin and Reiter, Bricker & Zakovics, P. C., Portland.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Bryson, Linde and O'Connell, Justices.

O'CONNELL, Justice Pro Tempore.

**O'CONNELL, J.,** Pro Tempore.

This action was brought under the Federal Employers' Liability Act (45 USC § 51, et seq) to recover damages for personal injuries suffered by plaintiff in the course of his employment while working for defendant. The jury entered a verdict in the amount of $83,104 and a judgment was entered for that amount. Defendant moved for a new trial or, in the alternative, for a remittitur of a portion of the verdict. The motion was denied and defendant appeals.

Plaintiff suffered injuries when a 400 pound tank cart fell on his hands. Defendant admits that plaintiff was injured to some extent but contends that the evidence will not support a verdict in the amount of $83,104. Defendant further contends that the trial court erred in instructing the jury that it could consider loss of future earning capacity and future pain and suffering in its determination of damages.

This contention must be tested against the evidence most favorable to plaintiff. That evidence was sufficient to establish that plaintiff suffered severe pain at the time of the accident. One of his fingers was bent at a 90 degree angle and one finger was hanging only by the skin after the accident. Dr. Tupper, who first saw him after the injury, sewed up his hands, put them in bandages and later applied splints to protect his fingers from further injury. During that time, plaintiff was unable to do virtually anything that required the use of his hands. His wife had to tie his shoes, button his shirts and cut up his food. Following the initial treatment, plaintiff saw Dr. Schwartz for nearly one year and that doctor performed three separate surgeries on plaintiff's hands. Plaintiff was unable to return to work for 11 months; he had a stipulated wage loss of $10,658.

His primary hobbies and interests include art work, model building and doing mechanical work on auto-

mobiles.[1] He is no longer able to do those things or any detailed work. His fingers are sensitive to cold and he has residual numbness in his right hand fingers. He had previously suffered the loss of two fingers on his left hand, and the grip in that hand has been further weakened as a result of the crushing of his fingers. His wife testified that since the injuries to his hands he could no longer play with his children in the same manner as in the past, was unable to do his art work and model building and was not able to play golf. She also testified that since his injury gripping anything with his hands was a painful experience, that he had become very restless and frustrated, and that he had lost nearly 25 pounds.

Dr. Schwartz, the treating doctor who was called as *defendant's* witness, testified that there would be a permanent disability as a result of the injuries. It would affect him, the doctor stated, "If he were to be doing fine work * * * he would probably miss the motion of that [left middle finger] joint." He also testified that the disability might well affect him when attempting to do mechanical work, at least insofar as "doing very fine work with small screws and small objects." Moreover, that doctor pointed out that the plaintiff might have to undergo future surgery because of bone spurring.

The examining physician, Dr. Gill, testified similarly. There would, he said, be a permanent functional impairment, including loss of grip, dexterity and feeling in the fingers. He also described and explained the common experience the plaintiff has had of pain occurring in cold weather as a residual effect of crushing injuries to soft tissues. Plaintiff had a life expectancy of 41 years.

■ On the basis of this evidence we are of the opinion

---

[1] Plaintiff studied art for several years through correspondence courses at Michigan State University and the Rhode Island School of Design, and also took a number of specialized mechanics courses through General Motors when he worked for that company.

that the trial court did not err in permitting the jury to consider future pain and suffering and impairment of earning capacity as elements of plaintiff's damages. The injuries suffered by plaintiff limited his ability to use his hands. The jury could have decided that this could impair plaintiff's earning capacity if he were to seek employment at the kind of hand labor he had previously done for the railroad and that it could limit his effectiveness in the event that he chose to seek work as an automobile mechanic, for which he had some training. There was also a basis for deciding that plaintiff's capability to pursue his interest in art had been impaired. Likewise, there was evidence to permit the jury to conclude that there would be future pain and suffering as a result of the accident.

■ Applying the test now enunciated in *Oliver v. Burlington Northern,* 271 Or 214, 531 P2d 272 (1975), for determining whether a remittitur should be allowed, we do not think that the verdict is so unreasonably high as to "exceed any rational appraisal." 271 Or at 216. Or, expressing the same theory differently, the verdict is not " 'outrageous, shocking or monstrous,' " or " 'so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.' "[2]

Judgment affirmed.

---

[2] *See, Oliver v. Burlington Northern,* 271 Or 214, 221, 531 P2d 272 (1975), recognizing that although different language is used in expressing the test, "the same general idea is being expressed."