Argued and submitted November 9, 1981, reversed and
remanded June 16, 1982

# HENDERSON,
*Respondent,*

*v.*

# HERCULES, INC.,
*Appellant.*
## (No. A7809-15709, CA 19063)

646 P2d 658

Peter C. Richter and James N. Westwood, Portland, argued the cause for appellant. With them on the briefs was Miller, Nash, Yerke, Wiener & Hager, Portland.

J. Michael Alexander, Salem, argued the cause for respondent. With him on the brief were Brown, Burt, Swanson, Lathen & Alexander, Salem, Tom Schneiger, and Bricker, Zakovics & Querin, P.C., Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

In this personal injury case, defendant appeals from a judgment awarding plaintiff damages for injuries sustained when he was knocked or fell to the ground in trying to escape an explosion of one of defendant's chemical storage tanks. Defendant makes four assignments of error: (1) granting partial summary judgment to plaintiff on determining as a matter of law that the release given by plaintiff to his employer was not intended to release defendant and excluding all reference to the release; (2) allowing plaintiff to amend his complaint on the morning of trial to allege an aggravation of his existing arthritis; (3) applying the collateral source rule to bar evidence of payment made to plaintiff by his employer for his injury; and (4) allowing the jury to consider the possibility of future surgery and impairment of earning capacity in awarding damages.

On August 23, 1977, at approximately 3 a.m., a fire started in a chemical storage tank on defendant's property. Plaintiff, a switchman for Portland Terminal Railroad Company (Portland Terminal) was at work in Portland Terminal's railroad yard near defendant's storage tank when the fire occurred. Fearing an explosion, plaintiff ran from the area and was either knocked down by the explosion or fell down in attempting to get away, twisting his right knee. Plaintiff received immediate medical treatment for his injuries and, after consulting his family physician, began a physical therapy program.

On September 29, 1977, ten days after returning to his job, plaintiff made a claim to Portland Terminal for lost wages and was paid $2000 as compensation. In return, plaintiff signed a release prepared by the claims adjuster for Portland Terminal. The release document contained the following language:

> "In consideration of the payment to me of the sum of Two Thousand & No/100 Dollars * * * by Portland Terminal Railroad Company * * * I do hereby release and discharge said Terminal Company and all other companies for which said Terminal Company may have been acting at the time of the accident mentioned below, *and all other parties whomsoever,* from any and all claims and liability of every kind or nature, * * *. " (Emphasis added.)

Portland Terminal then advised defendant that it would be seeking reimbursement from defendant for the wage loss claim. Defendant did not respond to the demand, nor did it contribute toward the payment to plaintiff.

Plaintiff continued to experience pain and immobility in his right knee and, in September, 1978, filed this action, seeking damages caused by defendant's negligent maintenance of its storage tank. Defendant filed a general denial and interposed an affirmative defense alleging that plaintiff had released it from all liability for the explosion when he executed the release to Portland Terminal and was therefore estopped to pursue the claim.

In February, 1980, plaintiff underwent surgery on his knee. After a three-month convalescent period, he returned to work. However, he found it impossible to perform his switchman's duties and in July, 1980, was forced to change jobs from switchman to engineer.

In August, 1980, plaintiff moved for partial summary judgment on the issue of defendant's affirmative defense. The motion was granted and, although no order was entered memorializing the court's ruling, the case proceeded to trial. The jury returned a verdict in favor of plaintiff for $8,884.94 in special damages and $75,000 in general damages.

Defendant first assigns as error the trial court's granting partial summary judgment for plaintiff, contending that it is a question of fact for the jury whether plaintiff intended to release defendant when plaintiff signed the release with Portland Terminal.

A party moving for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. ORCP 47C; *Stanfield v. Laccoarce,* 288 Or 659, 665, 607 P2d 177 (1980); *Bodewig v. K-Mart, Inc.,* 54 Or App 480, 484, 635 P2d 657 (1981), *rev den* 292 Or 450 (1982). In the present case, the trial court correctly concluded that it was a question of fact whether the release was intended to release everyone or only persons in privity with the party who obtained the release. *Brackenbrough v. MacCloskey,* 42 Or App 231, 600 P2d 481 (1979). In granting the motion for

partial summary judgment, the court found that all the evidence indicated that the parties to the release did *not* intend defendant to be released from liability and that, therefore, there was no issue for the jury. The evidence presented by plaintiff consisted of the release itself and deposition testimony of himself and Portland Terminal's claims adjuster, both of whom testified that they did not intend that defendant be released. Defendant filed no opposing affidavits or other evidence, relying instead on the language of the release.

In *Jones v. Oberg*, 52 Or App 601, 607, 628 P2d 773, *rev den* 291 Or 662 (1981), a negligence case, we stated that in reviewing evidence on a motion for summary judgment,

"[t]he court's function is not to decide whether, if it were the trier of fact, it would conclude defendant was not negligent. Rather, the court is merely to determine whether *all* reasonable minds would necessarily conclude that defendant was not negligent. *Coffey v. Hilands*, 42 Or App 193, 197, 600 P2d 466 (1979). * * * " (Emphasis in original.)

Here the trial court simply weighed conflicting evidence, *i.e.,* the language of the release that purports to apply to " * * * all other parties whomsoever * * * " and the *post facto* deposition testimony of the claims adjuster and plaintiff, who said that the language was not intended to apply to defendant. In concluding that plaintiff was entitled to partial summary judgment, the trial court necessarily held that no reasonable person could infer that the language of the document accurately expressed the intent of the parties at the time they executed it.

Although the evidence is undisputed in this case, in the sense that defendant offered no evidence in opposition to plaintiff's motion for partial summary judgment, from the evidence submitted by plaintiff in support of his motion a reasonable trier of fact could draw different inferences as to what was intended by the release. Defendant had no duty to offer any evidence in opposition to the motion for summary judgment until plaintiff had offered evidence sufficient to entitle him to a directed verdict. *Taylor v. Baker*, 279 Or 139, 566 P2d 884 (1977). When a party's own evidence creates a jury question, a directed verdict

should be denied. *See Gordon Creek Tree Farms v. Layne et al*, 230 Or 204, 218, 358 P2d 1062, 368 P2d 737 (1962). Similarly, when the evidence in support of a motion for summary judgment demonstrates that there is an issue for the jury, it is error to allow a motion for summary judgment. An inference that the parties to the release meant what they said is at least a permissible one, and their affidavits to the contrary merely raised a triable issue of fact. The trial court's ruling granting plaintiff a partial summary judgment on defendant's affirmative defense was error requiring reversal.

We will discuss defendant's other assignments of error, because some of the questions raised may come up again on retrial.

■ ■ Defendant's second and third assignments, that the trial court abused its discretion in allowing plaintiff to amend his complaint and erred in applying the collateral source rule, are without merit. We see no reason to overturn the trial court's rulings on these matters.

Defendant's fourth assignment of error is that the court erred in allowing the jury to consider speculative evidence of future damages. During trial, plaintiff's treating orthopedic surgeon, Dr. North, was permitted to testify, over defendant's objection, that there was a *possibility* that future surgery on plaintiff's knee would be necessary. Defendant contends that a mere possibility is not enough upon which to base damages.

■ In *Feist v. Sears Roebuck & Co.*, 267 Or 402, 517 P2d 675 (1973), the Supreme Court acknowledged that, although medical probability may be required to establish the necessary *causal* relationship to support recovery, the jury could, nevertheless, consider future possibilities in determining damages. In *Pelcha v. United Amusement Co.*, 44 Or App 675, 606 P2d 1168, *rev den* 289 Or 275 (1980), this court held that where possibility of future surgery is more than merely conceivable, "the degree of likelihood was the subject of evidence and was properly a subject for the jury." 44 Or App at 678. There, the doctor had testified that the possibility of the need for future surgery was 30 to 45 percent. Here, Dr. North testified that the possibility was less than 50 percent. We conclude that, under the

holdings of *Feist* and *Pelcha,* the jury was entitled to hear evidence of possible future surgery in order to assess damages.

■     Defendant finally contends that it was error for the trial court to give an instruction on impairment of plaintiff's earning capacity because plaintiff's job as engineer paid more than his prior switchman's job. There was, however, evidence from plaintiff's treating physician that he had advised plaintiff against jumping off moving freight trains and to avoid repetitive squatting, crawling, climbing and walking on uneven ground. Plaintiff was no longer able to perform the physical labor required of the switchman's job. The evidence of his physical limitations was sufficient to permit the jury to consider impairment of earning capacity as an element of damages. *Rosa v. Burlington Northern, Inc.,* 277 Or 683, 561 P2d 629 (1977). We therefore find no error in giving the instruction.

Reversed and remanded.