Argued and submitted January 26, affirmed October 21, 1987

MENKE,
*Respondent,*

*v.*

BRUCE,
*Defendant,*

*and*

CITY OF SALEM,
*Appellant.*

(147361; CA A38708)

744 P2d 291

William G. Blair, Assistant City Attorney, Salem, argued the cause for appellant. With him on the brief was William J. Juza, City Attorney, Salem.

Clayton C. Patrick, Salem, argued the cause for respondent. With him on the brief was Daniel J. Gatti, Salem.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

City of Salem (defendant) appeals a judgment of $61,077.21 for plaintiff in his action for personal injuries sustained in an automobile accident. We affirm.

Defendant first assigns as error that the court denied its motion for summary judgment. We will not review the court's denial of the motion for summary judgment. *Mt. Fir Lumber Co. v. Temple Dist. Co.,* 70 Or App 192, 198, 688 P2d 1378 (1984); *compare Payless v. Brown,* 300 Or 243, 708 P2d 1143 (1985).

Defendant moved for a directed verdict at the close of plaintiff's case and again at the close of all the evidence. ORCP 60. It assigns as error that the court denied both motions. We consider only the latter motion and we review it in light of the whole record. *Dell v. K.E. McKay's Market,* 273 Or 752, 757, 543 P2d 678 (1975); *Roach v. Kelly Health Care, Inc.,* 87 Or App 495, 501 n 7, 742 P2d 1190 (1987). In support of its first motion defendant stated:

> "The first being there has been failure of proof that, A, there was a malfunction in the signal; B, that any failure of the signal to function as someone might expect was in any sense the cause of the collision."

In support of its second motion defendant stated, "I would renew at this point the directed verdict for causation." We interpret the latter statement to mean that defendant's specific grounds, *see* ORCP 60, were that the jury could not find from the evidence that the signal malfunctioned, that defendant caused the malfunction or that the malfunction caused the accident.

"In reviewing the denial of the motion for a directed verdict, we examine the facts to determine whether there was sufficient evidence from which the jury could reach a verdict." *Free v. Wilmar J. Helric Co.,* 70 Or App 40, 43, 688 P2d 117 (1984), *rev den* 298 Or 553 (1985). The jury could have found from the evidence that, on December 1, 1982, defendant's employe, Saur, in the course of his employment with defendant, attempted to reset the timing of a traffic signal at the corner of 25th and Mission Streets in Salem. When he turned the switch controlling through traffic on Mission Street, the signal stuck. Through traffic on Mission Street saw an

unchanging green light, while traffic on 25th saw an unchanging red light. After attempting to "unlock" the signal, Saur radioed to defendant's signal shop, located three or four blocks away, but he did not call the police for assistance. He did not use a stop sign that he carried in his truck to direct traffic, because he believed that he was not authorized to do so. The city pickup truck that Saur drove contained no flares or other warning devices.

Saur was aware that the device ("controller") controlling the traffic signals contained a switch which, when thrown, would make the signals flash red in both directions or red in one direction and yellow in the other. On the switch there was a handwritten label saying, "throwing switch cuts power to the controller." Saur had never seen such a label before, and he did not throw the switch, because he thought it would turn off all the lights. While he was examining the controller, Saur saw a car cross Mission on 25th against the red light.

Bruce drove up to the intersection, northbound on 25th. She waited, as she testified, for the time of "about half a song" on the car radio before deciding that the signal was stuck on red. She saw a car traveling southbound on 25th proceed across Mission. She assumed that the car had crossed against a red light and pulled out into the intersection herself. Plaintiff was driving west on Mission and collided with Bruce's vehicle. Plaintiff sustained serious injuries. He sued Bruce[1] and defendant.[2]

■       Defendant argues that, as a matter of law, the traffic

---

[1] Plaintiff and Bruce settled during the trial.

[2] In his third amended complaint, as further amended at trial, plaintiff makes three specifications of defendant's negligence:

"At said time and place, the Defendant City of Salem, its employees, and/or agents, were negligent in one or more of the following particulars:

"In causing the timing mechanism to malfunction, causing a situation wherein it was foreseeable that persons would be entering the intersection against a red light.

"In failing to recognize in a timely fashion that employee Saur's activities at the control panel regulating said intersection had altered the light sequence over a period of three to six minutes.

"In employee Saur's failure to undertake any effort to control or warn the traffic at the intersection of the dangerous condition caused when he knew or should have known of the danger posed therein by the malfunctioning light control."

signal did not malfunction. Relying on *former* ORS 487.125,[3] defendant asserts that, even in its "locked" state, the signal served its primary purpose—to control traffic so that drivers would not heedlessly cross each other's paths and that controlling the orderly flow of traffic is only the signal's "secondary" purpose. By sending clear and unconflicting signals to the drivers on Mission and 25th Streets, the signal fulfilled its "primary purpose" and, therefore, did not malfunction. That argument is not persuasive. *Former* ORS 487.125 does not mean that the signal did not malfunction just because it gave a steady signal. The jury could find from the evidence that, to function properly, the signal should have changed periodically and that it malfunctioned because it did not change.

■        Defendant argues that, even if the jury could find that the signal malfunctioned, it could not find from the evidence that the city caused the malfunction. We disagree. The jury could find that the signal's failure was due to Saur's attempt to reset the timing device and defendant's failure to maintain the equipment.[4]

---

[3] *Former* ORS 487.125 provided:

"(1) Whenever traffic is controlled by a traffic control signal showing different colored lights or colored lighted arrow lights successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend. The lights indicate and apply to drivers and pedestrians as follows:

"(a) A driver facing a green light may proceed straight through or turn right or left unless a sign at that place prohibits either turn. A driver shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time the green light is shown. A pedestrian facing this light may proceed across the roadway within any marked or unmarked crosswalk, unless prohibited from doing so by other official traffic control devices.

"* * * * *

"(d) A driver facing a steady red signal light alone shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection. Except as provided in ORS 487.130, the driver shall remain standing until a green light is shown alone. A pedestrian facing a steady red light shall not enter the roadway unless otherwise directed by a pedestrian control signal."

[4] A city traffic signal technician testfied regarding the switches and signal timing mechanism:

"Well, probably the one was making contact there and the other ones might have possibly gotten dirty or corroded a little bit. It's hard to say, but the spring tension might have been slightly loose. When it was turned, if that dirt in there or whatever, you couldn't see it with the naked eye, but it didn't make good enough contact."

■ Defendant argues further that, even if it caused the signal to malfunction, the malfunction did not cause the accident. Rather, it asserts, Bruce's disobedience of the signal caused the accident: if she had obeyed the steady red light that she saw, she would not have entered the intersection and the accident would not have occurred. Defendant contends that the malfunctioning signal was a "condition," rather than a "cause," of the accident. The jury, however, could find from the evidence that a substantial factor in causing the accident was Saur's failure to warn or control traffic when the malfunction occurred, including his failure to throw a switch that would have moved the signal from its "locked" condition and put it in a "four-way flash." Moreover, the jury could find that defendant could reasonably have foreseen that drivers would not wait indefinitely for a red light to change and would eventually attempt to cross an intersection if the light was "stuck" on red. Accordingly, the court did not err when it refused to grant defendant's motion for a directed verdict.

Defendant also assigns as error that the court denied its motion at the close of all the evidence to strike paragraph X(1) of the complaint, which alleged that defendant was negligent "[i]n causing the timing mechanism to malfunction in the control panel." There was evidence, however, from which the jury could conclude that the signal failed because of defendant's failure to maintain it and Saur's attempt to reset the timing device.

■ Defendant assigns error to the following jury instruction:

"The malfunctioning of a traffic control signal at a busy intersection may create a situation that's dangerous to those traveling through the intersection. The City of Salem may be liable for an injury caused by the dangerous or defective condition of the lights at this intersection if the plaintiff established that the lighting was in a dangerous condition at the time of the injury; that the injury was approximately [sic] caused by that dangerous condition; that the dangerous condition created a reasonably foreseeable risk of that type of injury, and the defendant was aware of the danger or risk and had time in order to act to prevent the injury."

Defendant told the court:

"I would except to the sort of amalgam of Plaintiff's

Requested Instructions 1 and 2 based on *Mathews v. Califor-
nia.* I believe that does not correctly state the law. * * * And I
would point out for the record that we have provided a more
correct statement of Oregon law in our argument regarding
the *Graves* case."

Defendant argues that the court erred when it used
the term "approximate [sic] cause," because it is no longer the
legal standard in Oregon.[5] *See Dewey v. A. F. Klaveness & Co.,*
233 Or 515, 519, 379 P2d 560 (1963) (O'Connell, J., specially
concurring). Defendant, however, failed to preserve the error.
Its exception did not "particularly" state, as ORCP 59H
requires, that the court erred in using the term.[6] In its earlier
discussion with the court regarding *Graves v. Shippey,* 215 Or
616, 300 P2d 442, 337 P2d 347 (1959), defendant did not
discuss the propriety of the term "proximate cause." Its refer-
ence to *Graves* did not assist the court, because, in *Graves,* the
court applied the "proximate cause" standard.

Defendant also argues that use of the term "dan-
gerous condition" was error, but defendant did not state why
use of the term was erroneous.

Defendant finally assigns as error that the court
failed to grant its motions for judgment notwithstanding the
verdict or for a new trial. It asserts that there was an error in
law occurring at the trial to which it excepted. It reiterates in
support of this assignment of error only the arguments which
we have rejected in connection with the other assignments.

Affirmed.

---

[5] Both parties understood that the court meant "proximate cause," and defendant
does not base its argument on the use of the term "approximate cause" rather than
"proximate cause."

[6] Among the purposes of exceptions to jury instructions are to point out the error
to the trial court and to give it the opportunity to correct itself. *Delaney v. Taco Time
Int'l,* 297 Or 10, 18, 681 P2d 114 (1984); *Brigham v. Southern Pacific Co.,* 237 Or 120,
124, 390 P2d 669 (1964).