Argued and submitted May 26, 1987, affirmed January 27, 1988

LYTLE,
*Respondent,*

*v.*

CITY OF PORTLAND,
*Defendant,*

NORTHWEST NATURAL GAS CO.,
*Appellant.*

(A8407-04244; CA A38233)

748 P2d 1033

Jeffrey M. Batchelor, Portland, argued the cause for

appellant. With him on the briefs were Lindsey H. Hughes, James E. Bartels, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Elden M. Rosenthal, Portland, argued the cause for respondent. With him on the brief was Linda J. Rudnick and Rosenthal & Greene, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Northwest Natural Gas Company (defendant) appeals from plaintiff's judgment for $175,000 general damages and $2,000 special damages in his negligence action for personal injuries.[1] Plaintiff was injured when he fell into an open trench that defendant had dug in a city sidewalk. Defendant assigns as error that the court denied its motion to withdraw plaintiff's claim for reduced earning capacity from the jury, its instruction to the jury on impaired earning capacity and its refusal to give an instruction that defendant requested. We affirm.

Defendant's motion to withdraw plaintiff's claim from the jury is the equivalent of a motion for a directed verdict on the issue of impaired earning capacity. Accordingly, we view the evidence in the light most favorable to plaintiff. *Brown v. J.C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). When plaintiff fell, he caught himself with his hands and pulled himself out of the trench. He had a cut on one shin and was bleeding. A few days later he felt pain in his sternum and rib cage and then in his lower back. The cut on the shin healed and resulted in no permanent injury, and the pain in his sternum and rib cage had abated by the date of trial. Plaintiff, however, suffered continuing back pain.

Plaintiff, age 35, is a trained chemist. He acquired a bachelor's degree in chemistry, a master's in analytical chemistry and, after he had worked as a research chemist, a doctorate in environmental science and resources and analytical chemistry. At the time of the injury, he was teaching chemistry at Pacific University as an assistant professor. He did not miss any work due to the injury, but the constant back pain that he suffered interfered with his teaching duties and made it impossible for him to begin an independent research project. His field of research involved traveling to remote sites and lifting heavy containers of water, which he could no longer do. The pain interfered with his concentration and made lecturing difficult. He could not stand for long periods and had difficulty supervising laboratory sessions. The pain drained

---

[1] Plaintiff sued both the City of Portland and defendant, but the claims against the city were not tried. The court entered a judgment dismissing the claims against the city.

his strength and left him too tired to do independent research. Plaintiff could not expect to secure a tenured teaching position without research work and published results. After three years at Pacific University, he left. His salary then was $18,700 for nine months as compared to $16,500 at the time of the accident. At the time of trial he was employed in private industry as an environmental chemist. It was a sedentary job. His salary was $34,000 for twelve months.

Defendant argued in support of its motion:

> "If Plaintiff is still contending that whether one of their [*sic*] items of damage is reduced earning capacity, there's been an absolute failure of proof on that evidence, Your Honor. Mr. Lytle was making $18,000 when he left Pacific, starting out making $34,000 on his current job and he had no time off."

Defendant concedes that there is evidence from which the jury could find that plaintiff's injury was permanent. It also acknowledges that, in general, evidence of a plaintiff's permanent injury is sufficient to allow the court to submit to the jury "the question whether there has been an impairment of his future earning capacity." *Tavenner v. Figini,* 273 Or 415, 417, 541 P2d 437 (1975). Defendant contends, however, that this case is different, because plaintiff continued to work as a professor for three years after the injury and because, when he changed jobs, he earned substantially more than he had as a teacher. Accordingly, defendant argues, plaintiff's injury did not interfere with his earning capacity.

Plaintiff contends that he is entitled to recover for loss of future earning capacity because, due to his injury, he was forced to change careers. He argues that his post-injury earnings are relevant, but not dispositive, evidence of his future earning capacity.

The jury heard evidence of plaintiff's actual earnings, his life expectancy, his training and the disabling effects of his injury. It could find that, before his injury, plaintiff had the necessary skill and training to work as a teacher, a researcher and an environmental chemist, but that after the injury his pain was so severe that he had to forego all but sedentary work. Accordingly, there was evidence from which the jury could conclude that his earning *capacity* had diminished, even though at the time of trial he was making more money than he had been before his injury.

In *Henderson v. Hercules,* 57 Or App 791, 646 P2d 658 (1982), the plaintiff was forced to change jobs from switchman to engineer due to a knee injury. We rejected the defendant's argument that it was error to instruct the jury on the plaintiff's impairment of future earning capacity because he earned more as an engineer that he had as a switchman.[2] Defendant's reliance on *Creel v. Shadley,* 266 Or 494, 513 P2d 755 (1973), is misplaced. There the court held that there was no evidence from which a jury could find that plaintiff, a timber faller, had suffered a loss of earning capacity from his permanent injury—the loss of three teeth. The court recognized, however, that in other circumstances a loss of teeth could interfere with a worker's earning capacity. Here, there is evidence from which the jury could find that plaintiff's back injury interfered with his ability to do research and teach in his chosen field and would limit plaintiff to employment in sedentary jobs. The court did not err when it denied defendant's motion.

Defendant next assigns error to the court's "giving of the instruction on impaired earning capacity," but did not state with particularity why the instruction was erroneous. ORCP 59H. Defendant failed to preserve any error. *Menke v. Bruce,* 88 Or App 107, 113, 744 P2d 291 (1987).

Defendant assigns error to the court's refusal to give the instruction that it requested on impaired earning capacity. It argues that "the court should have told the jury * * * that they were not to consider evidence consisting of mere speculation and guesswork about future events." In its instruction, the court stated that "neither are you to base your decision on guesswork, conjecture or speculation." It was not obliged to give defendant's duplicative requested instruction.

Affirmed.

---

[2] Other jurisdictions have ruled that an increase in wages following an injury does not, by itself, determine that there is no decreased earning capacity. *See, e.g., United States v. Jacobs,* 308 F2d 906 (5th Cir 1962), and cases cited at 22 Am Jur 2d "Damages," § 94 n 18.