Argued and submitted March 22, 2012, reversed July 17, 2013

Ronda PARK,
an individual,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
acting by and through
Department of Corrections,
*Defendant-Respondent,*

*and*

Mark NOOTH,
Jamie Herrera
and Ofelia Alvarado,
*Defendants.*

Malheur County Circuit Court
09037252L; A146485

307 P3d 503

Elizabeth A. McKanna argued the cause for appellant. With her on the briefs was McKanna Bishop Joffe & Arms, LLP.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Brewer, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

Plaintiff appeals from a supplemental judgment that granted attorney fees to the state after a jury returned a defense verdict in plaintiff's suit against the state for sex discrimination and unlawful retaliation. After the jury returned its verdict, the trial court submitted a "special verdict form" to the jury that asked it to answer several questions regarding plaintiff's veracity and whether her claims were "frivolous, unreasonable, and brought in bad faith." The jury returned the special verdict, indicating that it found that plaintiff's statements to her employer and to the court about the incidents underlying her claims were untruthful. The state, after a general judgment was entered, sought an enhanced prevailing party fee, costs, and attorney fees under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-5(k). The trial court, after independently concluding that plaintiffs' claims were "unreasonable, frivolous, and without foundation," awarded the state a portion of the attorney fees sought and entered a supplemental judgment. Plaintiff appeals that judgment, challenging the trial court's submission of the special verdict form to the jury, as well as the court's award of attorney fees. We reverse the award of attorney fees, concluding that the trial court erred in determining that plaintiff's claims were "unreasonable, frivolous, and without foundation."[1]

Plaintiff, an employee of the Oregon Department of Corrections (DOC) at the Snake River Correctional Institution(SRCI), filed a complaint alleging unlawful employment practices by the state, raising state and federal claims of unlawful sex discrimination and unlawful retaliation for opposing unlawful employment practices, as well as a claim for intentional infliction of emotional distress. Plaintiff's allegations of discrimination were based on negative employment actions taken against her after three separate incidents at work. Generally, those incidents involved (1) a physical altercation with a male coworker, (2) accusations that plaintiff made an anonymous call to a local newspaper

---

[1] Because we reverse the attorney fee award on the merits, we do not address plaintiff's first assignment of error regarding the court's submission of a special verdict form to the jury.

to report misbehavior by a DOC employee, and (3) an incident in the SRCI mailroom.

The following facts are uncontroverted. In April 2007, plaintiff happened upon a set of keys that were unsecured, which was a violation of DOC policy. When she picked up the keys to make a security violation report, a male coworker, who was responsible for the keys, grabbed her wrist. Plaintiff and the male coworker differed on how much force was applied to plaintiff's arm during the incident. She then filed a worker's compensation claim and was assigned light duty by DOC for a period of time. Plaintiff and the male coworker attended an informal mediation, at the end of which they both agreed that they could continue to work together. The male coworker was not disciplined for the incident.

Several days after that confrontation, a local newspaper reporter contacted a local food processing plant that employed DOC work crews to inquire about an anonymous report that a male DOC employee had urinated in a drain at the plant. When initially asked about the incident, the offending coworker told his supervisor that he had poured the contents of a soda bottle down the drain. The coworker admitted to the incident when directly asked if he had urinated in the drain. The details of that incident were well known within DOC and resulted in a letter of apology from DOC to the plant's owner. Further, the offending employee had received a "non-disciplinary letter of instruction" and no further discipline for his actions.

Almost immediately after the report, DOC officials "pointed the finger" at plaintiff as the source of the anonymous tip and launched an investigation. Plaintiff was reassigned to the mailroom a few days later, and she asserted that the reassignment was stigmatizing and cost her the opportunity to work overtime and holidays. After being reassigned, plaintiff lodged an internal complaint of sex discrimination, challenging her reassignment and DOC's failure to discipline the two male coworkers involved in the prior incidents. Her internal complaint eventually resulted in a determination by DOC that there was not sufficient evidence to substantiate plaintiff's claim.

About two weeks after her reassignment and the filing of her internal complaint, plaintiff was suffering some ill effects from estrogen treatment that she was receiving, which led to a discussion between plaintiff and some female coworkers in the mailroom about breast discomfort. That conversation occurred in the presence of a male employee. At some point in the discussion, plaintiff asked one or more of the female coworkers to touch her breast to confirm that it was unusually swollen, and at least one of them did so. A supervisor overheard part of the conversation and, upon learning the full extent of it, chastised the employees and initiated a "hostile work environment" investigation against plaintiff. Sometime later, plaintiff received a letter of "Initiation of Pre-dismissal Process" related to the mailroom incident. That disciplinary process resulted in a one-step pay reduction for six months, but after plaintiff grieved the pay reduction through her union, DOC withdrew the reduction and replaced it with a letter of reprimand.

In the immediate aftermath of the mailroom incident, plaintiff was separated from other staff to perform mail sorting duties. Plaintiff objected, requested that she be sent home, and was placed on paid administrative leave, where she remained for three-and-a-half months while DOC investigated the mailroom incident.

Some months later, plaintiff filed a complaint with the Civil Rights Division of the Oregon Bureau of Labor and Industries (BOLI), alleging that she was subject to different treatment and discipline based on her gender and in retaliation for whistle-blowing, invoking the worker's compensation system, and reporting unlawful employment practices and gender discrimination. BOLI returned a determination of "substantial evidence of an unlawful employment practice" in violation of ORS 659A.030(1)(b) related to a claim of gender discrimination. As to plaintiff's other allegations, BOLI returned a finding of "no substantial evidence."

Plaintiff proceeded to file a complaint in circuit court raising federal and state claims of discrimination. The parties eventually stipulated to dismissal of plaintiff's state law claims, so that only plaintiff's claim for gender discrimination

and unlawful retaliation under Title VII proceeded to trial.[2] Before trial, the trial court denied the state's motion for summary judgment, concluding that genuine issues of material fact existed given that the male employees in question engaged in misconduct of "comparable seriousness" to the conduct that plaintiff had been accused and disciplined for, but plaintiff had suffered much more severe discipline than did her male counterparts. As to plaintiff's sex discrimination claim, the trial court concluded that there was "sufficient evidence from which a finder of fact could conclude that the [state] engaged in sex discrimination in its dealings with [p]laintiff." As for plaintiff's retaliation claim, the trial court concluded that summary judgment was inappropriate because there was sufficient evidence in the record "from which the jury could at least draw an appropriate inference that the adverse employment action was causally connected to the protected activity."

The case proceeded to trial and, at the close of plaintiff's case, the state moved for a directed verdict. The court, after noting that discrimination could be inferred from the evidence of disparate treatment of "similarly situated employees," denied the motion, concluding that "a lot of the issues, factual issues, are in dispute and the jury is the one who has to resolve those issues of dispute. And I think there's enough evidence on plaintiff's side to support her evidence—or to support her claim to avoid a motion for directed verdict."

The jury ultimately returned a verdict for the state. Afterwards, the state asked the trial court to submit a special verdict form to the jury regarding plaintiff's veracity. The court did so, and the jury returned the form indicating that it found plaintiff to be untruthful. That action is the subject of plaintiff's first assignment of error, which we need not reach.

After the court entered a general judgment, the state petitioned for attorney fees, an enhanced prevailing party fee, and costs and disbursements. Plaintiff contended that

---

[2] The state had brought a counterclaim for breach of contract. The court granted plaintiff's motion for directed verdict on the state's counterclaim and it is not at issue on appeal.

an award of attorney fees against her was not appropriate under Title VII. The trial court awarded the state $30,000 in attorney fees, as well as additional costs and disbursements. In the order awarding attorney fees, the court determined:

"1. That independent of the special advisory jury verdict, and based on this Court's personal observations of the witnesses and evidence at trial, that plaintiff was not truthful in her statements to her employer concerning the three incidents underlying her claims for discrimination and retaliation * * *;

"2. That independent of the special advisory jury verdict, and based on this Court's personal observations of the witnesses and evidence at trial, that plaintiff was not truthful in her statements during the trial of this matter concerning the three incidents underlying her claim for discrimination and retaliation * * *;

"3. That the Court's ruling on the motion for summary judgment and the Court's ruling on the defendant's motions for a directed verdict required the court to assume the facts as alleged by the plaintiff and all reasonable inferences from those facts were true;

"4. That with regard to the plaintiff's testimony this is not a case of different witnesses remembering events differently. This is a disturbing case of a plaintiff lying under oath in support of her claims;

"5. That the decision to award attorney fees is appropriate in this case beyond the fact that the plaintiff did not prevail on her claims at trial;

"6. That prior to the filing of this lawsuit the plaintiff had been reinstated with back pay after having demanded to be placed at home, and was paid to sit at home;

"7. That based upon the above findings, the plaintiff's case alleging discrimination and retaliation was unreasonable, frivolous, and without foundation;

"8. That taking into account the plaintiff's current financial situation and the financial situation projected by plaintiff's counsel, an award of $30,000 in attorney fees is appropriate to deter future suits brought in bad faith, but not deter good faith suits, and that such an award will not be unduly burdensome to plaintiff, and;

"9.    That the award of attorney fees in this case serves the same purpose as an enhanced prevailing party fee."

The court entered a supplemental judgment awarding the state attorney fees and costs, from which plaintiff now appeals.

Because it is dispositive, we begin with plaintiff's second assignment of error, in which she challenges the trial court's award of fees under 42 USC section 2000e-5(k), contending that the trial court erred as a matter of law by determining that plaintiff's claims were not objectively reasonable. Section 2000e-5(k) simply provides:

"In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity Commission (EEOC)] or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the [EEOC] and the United States shall be liable for costs the same as a private person."

In *Christiansburg Garment Co. v. EEOC*, 434 US 412, 422, 98 S Ct 694, 54 L Ed 2d 648 (1978), the United States Supreme Court held that under section 2000e-5(k) a prevailing plaintiff should generally be awarded attorney fees, but when the defendant prevails,

"a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense."

(Emphasis in original.) The court further explained that:

"In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the

victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."

*Id.* at 421-22.

On appeal, plaintiff argues that the standard set in *Christiansburg* is high, and that the trial court erred in concluding that it was met in this case. Plaintiff contends that typically, where a state agency finds substantial evidence of discrimination and a plaintiff survives motions for summary judgment and directed verdict, the defendant has failed to show that the plaintiff's claim was unreasonable. Plaintiff further maintains that the trial court could not award fees in this case simply because plaintiff lost or was not credible. That is, the trial court erred by concluding that, because plaintiff was not truthful on some things, there was no basis in law or fact for her claims. Plaintiff asserts that, even assuming that she was untruthful about some details of the underlying incidents, her claims could not have been objectively unreasonable because she put on a *prima facie* case that she was treated more harshly than her male coworkers and the court's conclusion that she was untruthful was related to minor details of the three incidents that precipitated her discipline, not the disparate discipline that she received.

The state counters that, as the trial court found, plaintiff knowingly made false statements to her employer and to the court about the incidents that led to the discipline of which she complains. Further, the state points out that the trial court explicitly acknowledged that it was awarding fees not merely because plaintiff lost at trial but because she had lied about the facts that made up the basis for her claim. The state contends that this was not a case in which the trial court merely found that plaintiff was not credible; rather, it found that plaintiff was deliberately untruthful about the incidents that led to her discipline. In sum, the state contends that, "to reverse the award in this case would send a message that a Title VII claim based on fabricated events may be brought with impunity."

There are no hard and fast rules for determining when a claim may be deemed frivolous, unreasonable, or without foundation under *Christiansburg*.[3] Each case must be evaluated in light of the Court's warning not to engage in *post hoc* reasoning and to avoid undercutting "the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." *Christiansburg*, 434 US at 422. Nevertheless, there are several guideposts that federal courts use to evaluate an attorney fee claim by the prevailing defendant in a Title VII case. Among other things, courts will examine whether the plaintiff established a *prima facie* case, whether the defendant offered to settle, and whether the trial court dismissed the case before trial or held a full-blown trial. *Sullivan v. School Bd. of Pinellas County*, 773 F2d 1182, 1189 (11th Cir 1985). In fact, the denial of a dispositive motion can be an appropriate consideration when determining whether a plaintiff's case was frivolous, unreasonable, or groundless. *EEOC v. Great Steaks, Inc.*, 667 F3d 510, 517 (4th Cir 2012). The denial of a motion for judgment as a matter of law "made at the close of all evidence is a particularly strong indicator that the plaintiff's case is not frivolous, unreasonable, or groundless." *Id.* at 518 (noting that the court is "hard-pressed to imagine circumstances where the district court could make this determination and nevertheless deem the plaintiff's case frivolous, unreasonable, or groundless"). However, the mere establishment of a *prima facie* case does not render an attorney fees award inappropriate if the discovery process makes it apparent that the plaintiff's claim is patently frivolous, yet the plaintiff continues the litigation. *Blue v. U.S. Dept. of Army*, 914 F2d 525, 536 (4th Cir 1990).

Of particular importance to the present case, federal law is clear that it is impermissible to award attorney fees to the defendant under section 2000e-5(k) simply because a witness is disbelieved or because the court's credibility determinations went against the plaintiff. *AFSCME*

---

[3] We apply federal substantive law to federal claims brought in state court. *See Geris v. Burlington Northern, Inc.*, 277 Or 381, 561 P2d 174 (1977) ("[I]n cases arising under federal law * * * state courts are bound to follow federal substantive law but are free to follow their own practices as to matters which are strictly procedural.").

*v. County of Nassau*, 96 F3d 644, 652 (2d Cir 1996) (stating that, although the assessment of evidence and testimony is within the province of the trier of fact, a claim is not necessarily frivolous because a witness is "disbelieved or an item of evidence is discounted, disproved or disregarded at trial"); *see also EEOC v. Bruno's Restaurant*, 13 F3d 285, 290 (9th Cir 1993) (even accepting trial court's finding that the plaintiff's witnesses were not credible, attorney fees were not appropriate unless the plaintiff was aware that the evidence of discrimination was not credible). Further, generally, where evidence is introduced that, if credited, would suffice to support a judgment, fess are unjustified. *AFSCME*, 96 P3d at 652. In fact, a court's ruling in a Title VII case that is based on credibility determinations can indicate that there was some evidence to support the claims. *Sullivan*, 773 F2d at 1189.

On the other hand, where the plaintiff is aware that the evidence of discrimination is not credible, the proceeding may be frivolous. *Bruno's Restaurant*, 13 F3d at 290. Similarly, if the plaintiff presses a claim which she knew or should have known was groundless, frivolous, or unreasonable, an award of fees is appropriate. *Id.* And, as a general matter, an award of attorney fees may be appropriate when the plaintiff introduced no evidence to support the claims. *Sullivan*, 773 F2d at 1189. In short, "no litigant can be allowed to abuse * * * courts or opposing litigants with impunity. Like all other litigants, civil rights litigants face the prospect of sanctions if they pursue patently frivolous lawsuits." *Blue*, 914 F2d at 534.

The trial court's determination that plaintiff here was "untruthful in her statements to her employer [and the court] concerning the three incidents underlying her claims for discrimination and retaliation" led to its conclusion that her claims were unreasonable, frivolous, and without foundation. Plaintiff's position is that the court simply disbelieved her or made credibility determinations against her, which, under the federal case law, is not enough to justify an attorney fee award. The state's position is that plaintiff's lying under oath about details of the incidents underlying her claims is not merely a credibility determination; rather,

her deliberate untruthfulness undermined the validity of her claims to such an extent as to make them unreasonable and frivolous.

Considering the circumstances of plaintiff's case, the trial court's rationale, and the high bar set in *Christiansburg*, we conclude that the court erred in awarding attorney fees. At the outset, although not dispositive of the issue, the BOLI finding of substantial evidence of discrimination and the trial court's denial of motions for summary judgment and directed verdict militate against a conclusion that plaintiff's claims were unreasonable, frivolous and without foundation. *Sullivan*, 773 F2d at 1189. In particular, the trial court, in denying the state's motion for summary judgment, acknowledged that there were genuine issues of material fact given that plaintiff and the male coworkers were in similar jobs and engaged in similar conduct which involved "certain elements of dishonesty," yet plaintiff was disciplined more severely than her male coworkers. The trial court also denied summary judgment on plaintiff's unlawful retaliation claim because there was evidence in the record from which the jury could infer that the adverse employment action suffered by plaintiff was causally connected to plaintiff's complaint of discrimination. Similarly, the trial court denied the state's motion for directed verdict after acknowledging that "a lot of the issues, factual issues, are in dispute and the jury is the one who has to resolve those issues of dispute. And I think there's enough evidence on the plaintiff's side to support her evidence—or to support her claim to avoid a motion for directed verdict." In both instances, the trial court recognized that plaintiff's claims were supported by evidence sufficient to allow a reasonable factfinder to find in her favor.

Moreover, that evidence did not depend entirely on plaintiff's own testimony. Indeed, even disbelieving plaintiff's testimony, the essential elements of her claim, as set forth above, are not in dispute. The parties differ as to specific details of plaintiff's conduct and some of the surrounding circumstances, but there is no dispute that plaintiff was disciplined and the male coworkers involved in the incidents or similar types of incidents were not. Those facts are supported by evidence other than plaintiff's testimony. As the

trial court acknowledged, plaintiff introduced evidence, including DOC's documentation of the various incidents and disciplinary proceedings (or lack thereof), that tended to show that plaintiff suffered disparate discipline for similar misconduct. That evidence may have supported an inference of discrimination regardless of whether plaintiff's description of the underlying incidents was inaccurate or deliberately untruthful. In short, as the trial court acknowledged in denying the state's motion for directed verdict, there was evidence that created disputed factual issues that the jury could have resolved in favor of plaintiff, and that evidence was not dependant on whether plaintiff accurately recounted the details of the underlying incidents.

Ultimately, the trial court's explanation that plaintiff was untruthful concerning the three incidents that led to her discipline is not a justification for attorney fees in this case. In addition to the general principle that a claim is not frivolous because a witness was disbelieved or evidence was discredited at trial, we also credit plaintiff's argument that, even if plaintiff was untruthful as to some of the details surrounding the incidents that led to her discipline, that untruthfulness did not make her claim of gender discrimination or retaliation unreasonable or frivolous in this instance. Her claims were based on the theory that the discipline that she received for the incidents was disparate to the discipline her male counterparts received for similar incidents. There was evidence, independent of the testimony found untruthful by the court, that DOC disciplined plaintiff more severely for conduct that was similar in nature to the conduct engaged in by her male coworkers. Thus, the foundation of her claims (disparate discipline and retaliation) is not unreasonable if she lied about some of the details involved in the incidents that led to her discipline. The crux of her claims is tied to the discipline that she received for those incidents, which included punishment for being untruthful. Accordingly, because there was evidence, independent of the testimony disbelieved by the court, that supported plaintiff's claims and would have permitted the jury to draw inferences supporting her claims, the trial court's determination that plaintiff's claims were unreasonable and frivolous is error. Although there may be circumstances

where a plaintiff's untruthfulness about certain facts is so pertinent to the basis of the plaintiff's discrimination claims, that those claims are rendered unreasonable by that untruthfulness, this is not such a case.

Reversed.